Meghan Dawson McElvy
Texas State Bar No. 24065127
BRADLEY ARANT BOULT CUMMINGS LLP
600 Travis Street, Suite 5600
Houston, Texas 77002
Tel. 713.576.0314
mmcelvy@bradley.com


George H. Barber
Texas State Bar No. 01705650
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Phone:  (214) 939-8700
Fax:  (214) 939-8787
Email:  gbarber@bradley.com

*ATTORNEYS FOR STEVEN WEBSTER*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | ) |
| | ) **Case Number 22-30500-swe7** |
| **DENNIS JAMES ROGERS, II,** | ) **(Involuntary Proceeding)** |
| | ) |
| | ) |
| Debtor. | |

## ADMINISTRATIVE EXPENSE APPLICATION COVER SHEET

**Administrative Expense Application of:  Steven Webster**

**Capacity: Petitioning Creditor_____     Time Period:  January 1, 2022 to April 26, 2022**

**Bankruptcy Petition Filed on: March 22, 2022___**

**Date of Entry of Retention Order:___N/A_____    Status of Case:_ Pending_____**

**Amount Requested:**                    **Reductions:**

| | | | |
|---|---|---|---|
| Fees: | $ 421,316.38 | Voluntary fee reductions: | $ (97,418.14) |
| Expenses: | $ 6,688.61 | Expense reductions: | $ - |
| Other: | $ 0.00 | **Total Reductions:** | $ (97,418.14) |

**Total:**         $ __330,586.85_____

**Draw Down Request:**                    **Expense Detail:**

Retainer Received:           $ _0.00_____      Copies - per page cost and total:    _$1,879.35_

Previous Draw Down(s):    $ _0.00_____      Fax - per page cost and total:       $ _0.00_____

Remaining Retainer (now): $ _0.00_____      Computer Research:                 $ _2,350.95__

Requested Draw Down:       $ _0.00_____      Other: Filing fees; courier; service  $ _923.57___

Retainer Remaining (after): $ _0.00_____     Other: Meals/Travel                $ _1,534.74__

| **Hourly Rates** | **Attorney/Accountant** | **Paralegal/Clerical** |
| --- | --- | --- |
| Highest Billed Rate: | $ __1,350.00_____ | $ __410.00_____ |
| Total Hours Billed: | ____375.5_____ | ____86.80_____ |
| Blended Rate: | $ ___805.60_____ | $ __320.08_____ |

Meghan Dawson McElvy
Texas State Bar No. 24065127
BRADLEY ARANT BOULT CUMMINGS LLP
600 Travis Street, Suite 5600
Houston, Texas 77002
Tel. 713.576.0314
mmcelvy@bradley.com


George H. Barber
Texas State Bar No. 01705650
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Phone:  (214) 939-8700
Fax:  (214) 939-8787
Email:  gbarber@bradley.com

***ATTORNEYS FOR STEVEN WEBSTER***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **In re:** | ) |
| | ) **Case Number 22-30500-swe7** |
| **DENNIS JAMES ROGERS, II,** | ) **(Involuntary Proceeding)** |
| | ) |
| | ) |
| **Debtor.** | |

## STEVEN WEBSTER'S APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(3)(a) and (4)

## NOTICE

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., DALLAS, TX 75242 BEFORE THE CLOSE OF BUSINESS ON SEPTEMBER 5, 2024, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT**

**MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE SCOTT W. EVERETT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Steven Webster ("Webster"), petitioning creditor and party in interest in the above-styled bankruptcy case, and files this Application for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3)(a) and 503(b)(4) (the "Application").  In support thereof, Webster respectfully shows the Court as follows:

## I.    JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334.  This Application constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    PROCEDURAL BACKGROUND

3.    On March 22, 2022, Webster, along with three other individual creditors, Angela Garbiso and Debra and Russell Van Cleve (collectively, the "Petitioning Creditors"), filed an Involuntary Chapter 7 Petition (the "Involuntary Petition") against Dennis James Rogers, II (the "Debtor") pursuant to 11 U.S.C. § 303 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"), thereby commencing the above-styled bankruptcy case (the "Bankruptcy Case").  *See* Dkt. No. 1.

4.    On the same day, the Petitioning Creditors filed (1) an Emergency Motion for Entry of an Order (I) Appointing an Interim Trustee Under 11 U.S.C. Section 303(G) and (II) Granting Emergency Relief (the "Emergency Interim Trustee Motion"), and (2) a Motion for expedited hearing on the same.  *See* Dkt. Nos. 2 and 3.

5.    The Court—the Honorable Harlin Hale then presiding—held a hearing on the Emergency Interim Trustee Motion on March 28, 2024, and finding that "the relief requested in the

Emergency Motion is in the best interests of the Alleged Debtor, the estate, its creditors, and all other parties in interest," and further "having reviewed the Emergency Motion and having heard the statements in support of the relief requested therein at any hearing before the Court; and good and sufficient cause appearing therefor," granted the Emergency Interim Trustee Motion on the same day and entered an order that was "agreed as to form and substance" by the Petitioning Creditors and the Debtor.  *See* Dkt. Nos. 15 and 16.

6.      On April 20, 2022, after the Debtor failed to answer the Involuntary Petition, Webster filed (1) an Emergency Motion of the Petitioning Creditors for Entry of an Order for Relief in an Involuntary Case (the "Emergency Motion to Compel Order for Relief"), and (2) a motion for expedited hearing on the same.  *See* Dkt. Nos. 28 and 29.

7.      The Court held a hearing on the Emergency Motion to Compel Order for Relief on April 25, 2022, and entered an Order for Relief in the Bankruptcy Case on April 26, 2022.  *See* Dkt. Nos. 32 and 33.

8.      On May 2, 2022, the Debtor filed a Motion to Convert Case from Chapter 7 to 11 (the "Motion to Convert").  *See* Dkt. No. 43.  On May 18, 2022, the Trustee filed a response in opposition to the Motion to Convert on the basis that Debtor did not fall in the category of an "honest but unfortunate debtor" and because conversion would be futile. *See* Dkt. No. 53.  Similarly, on May 20, 2022, Creditors Webster, Angela Garbiso, and Debra and Russell Van Cleve filed an objection to the Debtor's Motion to Convert on the basis that the Debtor was ineligible for Chapter 11 and that, in any event, converting this case to Chapter 11 would unduly burden the estate and its creditors with additional costs and unnecessary delay without any corresponding benefits.  *See* Dkt. No. 54.

9.      On June 9, 2022, approximately one hour before the deposition of Debtor was scheduled to begin, the Debtor withdrew the Motion to Convert. *See* Dkt. No. 60.

### III.      FACTUAL BACKGROUND

10.     A significant portion of the facts and evidence supporting this Application have previously been filed with this Court in support of the Involuntary Petition and Emergency Interim Trustee Motion. *See* Dkt. Nos. 1, 2 and 13.  Rather than refiling those materials again, Webster—where applicable—references and incorporates them herein.  New exhibits not previously filed with the Court are referred to herein in the format **Exhibit 'X.'**

11.     The Debtor, Dennis James Rogers, II, is no ordinary Chapter 7 debtor. As set out more fully in the Emergency Interim Trustee Motion and the numerous exhibits filed in support thereof by Webster on behalf of the Petitioning Creditors and the bankruptcy estate, for a number of years the Debtor carried out a wide-ranging fraudulent scheme by inducing numerous individuals and entities to invest millions of dollars in fake business opportunities that often involved the supposed purchase or sale of wholesale fuel or water rights. *See* Emergency Interim Trustee Motion, Dkt. Nos. 2 & 13.  Rather than using the funds in a legitimate manner for the stated purposes, the Debtor spent or absconded with them.  *See* Emergency Interim Trustee Motion, Dkt. No. 2 at ¶¶ 13–45.  In turn, this led to a string of lawsuits by his unpaid creditors, which—by the time this Bankruptcy Case was initiated—had resulted in nine final judgments or default judgments against him and/or his companies totaling over $13.9 million (excluding interest and attorneys' fees).  *See id.* at ¶¶ 1, 21–45; *see also* Dkt. No. 13 at Exs. 17, 22, 24, 27, 29, & 31–32.

12.     Webster was among those caught up in the Debtor's web of deceit.  In June 2020, the Debtor approached Webster and his associate, Dennis Woods, with a purported opportunity to bid on allocations of fuel positions from a stock in the Port of Brownsville through an auction supposedly

being held by the energy and commodity trading company Vitol. *See* Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 15. The Debtor, through a solely owned business entity called OMTC, Inc. ("OMTC"), offered to act as an intermediary and agent and informed them that an upfront cash deposit was required to participate in the Vitol auction. *See id.* at ¶ 16. The Debtor falsely promised immediate return of the funds within one banking day if either Webster or Mr. Woods decided to terminate their purchase of the fuel during a purported option period. *See id.* at ¶ 17; *see also* Dkt. No. 13 at Exs. 72–73 (Webster and Woods Fuel Purchase Agreements).

13.    Relying on the Debtor's assurances, Webster and Woods deposited a total of $6,552,000 into OMTC's bank account ($4.41 million by Webster and $2.142 by Woods). *See* Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 17; *see also* Dkt. No. 13 at Exs. 74–75 (Webster and Woods Wire Transfers). Soon after, the Debtor recommended the "transactions" with Vitol be terminated (supposedly owing to less favorable commercial terms than originally anticipated). As Webster and Woods later learned, the Debtor had completely fabricated the Vitol fuel auction to defraud them. *See* Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 18; *see also* Dkt. No. 13 at Ex. 4 (Vitol Cease & Desist Letter).

14.    Despite multiple excuses and promises to pay, the Debtor failed to return the funds. The Debtor even went as far as sending fake Fedwire reference numbers and altering Goldman Sachs wire transfer confirmations and emails to make it seem as if he was returning the money (or at least attempting to). *See* Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 20; *see also* Dkt. No. 13 at Exs. 7–8 (Goldman Sachs Wire Transfer Confirmations and Emails).

15.    Only after filing suit against the Debtor and OMTC in the 191st District Court of Dallas County, Texas in Cause No. DC-20-10214 (the "State Court Action") did Webster and

Woods learn through discovery what had happened to their funds.[1]  *See* Emergency Interim Trustee
Motion, Dkt. No. 2 ¶ 21; *see also* Dkt. No. 13 at Ex. 10 (Webster Second Amended Petition).
Almost immediately, the Debtor had transferred virtually the entire balance of $6,550,000 (all but
$2,000 of the funds) to his personal JPMorgan Chase checking account before launching on an
extravagant spending spree that included:  buying valuable residential property in Dallas for
approximately $1.7 million; paying an architect; paying the legal fees of his defense attorneys in
pending lawsuits; paying personal credit card debt; withdrawing $560,000 in cash; and transferring
funds to his personal Robinhood investment account and various other personal accounts.  *See*
Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 23; Dkt. No. 13 at Ex. 11 (Chase Bank Records).
In addition, between June and July 2020, the Debtor transferred a total of $2,497,000 to Mandarin
Capital LLC, another of the Debtor's creditors that purportedly loaned him over $6 million.  *See*
Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 24, 35–36.

16.    Eventually, on January 14, 2021, Webster and the Debtor reached a settlement
agreement under which the Debtor agreed to pay Webster $5.25 million by March 1, 2021, in
exchange for a full and final release of Webster's claims.  *See id.* at ¶ 26; *see also* Dkt. No. 13 at
Exs. 16–17 (Webster Settlement Agreement and Agreed Final Judgment).  The Debtor agreed that if
he failed to do so then Webster could file an Agreed Final Judgment entitling Webster to $6.25
million in compensatory damages and other relief.  *Id.*  Critically, the Agreed Final Judgment, signed
by the Debtor, stipulates that "[w]ith regard to Seven Webster's fraud claims against Rogers, the
Court has determined that Rogers made representations to Steven Webster, which representations

---

[1]    On the eve of a temporary restraining order hearing in that litigation (at which the state district court agreed to freeze several of the Debtor's and OMTC's bank accounts), the Debtor voluntarily and unilaterally returned Mr. Woods's funds of $2.142 million.  In contrast, Webster has never received any return of his $4.41 million or the $6.25 million plus attorneys' fees and interest owed under the Agreed Final Judgment entered in the State Court litigation.

Rogers knew to be false, with the intent to deceive Steven Webster." *Id.*   The Debtor ultimately failed to pay and the State Court entered the Agreed Final Judgment in Webster's favor.   *Id.*

17.   Before and after entry of the Agreed Final Judgement, the Debtor persisted in a pattern of evasiveness and misconduct.   *See* Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 29–30.   Even after being held in both civil and criminal contempt for flouting the State Court's temporary restraining orders, the Debtor refused to respond to post-judgment discovery by frivolously asserting Fifth Amendment objections, forcing Webster to file a motion to compel that the State Court granted.   *See id.*; *see also* Dkt. No. 13 at Exs. 18–19 (State Court Contempt Orders). The State Court found that the Debtor had "repeatedly and knowingly disregarded and disobeyed [its] orders," doing so even after he had "already been held in contempt of court for knowingly violating orders of this Court and even after that finding, has failed to obey the valid orders of this Court." *Id.*   The State Court further found that "Rogers' behavior affronts the dignity and authority of this Court and obstructs this Court's administration of justice." *Id.*   The State Court then ordered Rogers confined in Dallas County jail until he had provided his post-judgment discovery responses. *Id.*

18.   Only then, after two weeks in jail, did the Debtor finally provide discovery responses disclosing that he had over $21 million in "past due" debts to 28 creditors.   *See* Emergency Interim Trustee Motion, Dkt. No. 2 at ¶ 31; *see also* Dkt. No. 13 at Ex. 20 (Excerpts of Rogers' Verified Interrogatory Answers & Exhibits).   At the same time, the Debtor stated that he had little non-exempt personal property and negative annual net income of approximately -$96,000 to $126,000. *Id.*   Faced with this information and having serious concerns that the Debtor may have absconded with his assets to intentionally put them out of the reach of his creditors, Webster was left with no alternative but to commence this involuntary bankruptcy proceeding to recover his lost funds.

19.     Webster was joined by three of Rogers' other creditors—Angela Garbiso and Russell and Debra Van Cleve who are represented by David Miller of Schneider Miller Reynolds, P.C. ("SMR").[2]  Webster, however, incurred virtually all of the legal fees and expenses of undertaking that effort through his counsel—then with Baker Botts LLP's Houston office, which was efficient and logical since that was the same firm and trial counsel that had handled the underlying State Court Action.  *See* **Exhibit J**, Declaration of Meghan McElvy at ¶ 5–7 (hereafter "McElvy Decl."). The other petitioning creditors, through SMR, relied almost completely on the legal work performed by Webster's counsel and merely indicated their assent to the Involuntary Petition and to the Emergency Interim Trustee Motion.  *See* Dkt. Nos. 1, 2 and 13; *see also* **Exhibit J**, McElvy Decl. ¶ 6–7.

20.     Through the efforts of counsel engaged and paid exclusively by Webster, the Petitioning Creditors filed the Involuntary Petition on March 22, 2022.  *See* Involuntary Petition, Dkt. No. 1.  Despite being served with the involuntary summons on March 24, 2023, *see* Dkt. No. 11, the Debtor did not answer the Involuntary Petition or even engage counsel until May 2, 2022, several days after the Order for Relief was entered on April 26, 2022.  *See* Dkt. Nos. 33 (Order for Relief) and 42 (Creditor Matrix filed by Debtor).

21.     Because of the Debtor's long pattern of misleading and deceptive conduct and the serious threat of dissipation of assets, the Petitioning Creditors were also forced to file the Emergency Interim Trustee Motion and to request an emergency hearing on same, which was set for Monday, March 28, 2022.  *See* Dkt. Nos. 2 and 3.  Again, the legal fees and expenses of this effort were incurred and paid for entirely by Webster, with the other petitioning creditors merely indicating their assent to the Emergency Interim Trustee Motion.  *See* **Exhibit J**, McElvy Decl. ¶ 5–7.  The

---

[2]      Mr. Miller also serves as Special Counsel to the Trustee in this Bankruptcy Case.  *See* Dkt. No. 72 (Order granting application to employ SMR as Special Counsel on contingent fee basis).

tangled nature of the Debtor's affairs and illegitimate business dealings increased the complexity of preparing and filing both the Involuntary Petition and the Emergency Interim Trustee Motion. *See* Dkt. Nos. 2, 13. Webster's counsel attempted to negotiate a resolution with the Debtor regarding appointment of an Interim Trustee, but was unable to reach an agreement until Saturday, March 26, 2022. *See* **Exhibit A**, March 26, 2022, Email and attached agreed order signed by the Debtor. As a result, Webster's counsel had to fully prepare for an anticipated two-day evidentiary hearing featuring testimony from multiple witnesses and over one hundred potential exhibits. *See* **Exhibit B**, March 24, 2022, Email from J. Bergreen confirming hearing setting of four and a half hours on Monday, March 28, 2022 and three hours on Tuesday, March 29, 2022; *see also* Dkt. No. 13 (Witness and Exhibit List for Hearing on Emergency Interim Trustee Motion); **Exhibit J**, McElvy Decl. ¶ 15.

22.    The Debtor did not file any motion, answer or other responsive pleading to the Involuntary Petition by the deadline of April 14, 2022. Accordingly, the Petitioning Creditors were forced to file the Emergency Motion to Compel Order for Relief and move for an expedited hearing, which the Court held on April 25, 2022. *See* Dkt. Nos. 28; 29 and 32.

23.    As a result of the Petitioning Creditors' efforts, funds have been brought back into the estate and the Trustee, through Special Counsel, is actively pursuing other claims to bring additional funds back into the estate. *See* Trustee's 7/26/2024 Interim Report, Dkt. No. 247. Likewise, the Trustee and Special Counsel have recently moved to substantively consolidate five of the Debtor's corporations into this Bankruptcy Proceeding. *See* Motion to Consolidate, Dkt. No. 248.

24.    Furthermore, Debtor recently entered into a Plea Agreement with the United States in which he agreed to plead guilty to two counts of federal securities fraud, including one on the basis of the fraud he committed against Webster. *See* **Exhibit C**, Rogers' 4/26/2024 Plea Agreement &

Factual Resume of Dennis Rogers in Case No. 3-24CR0170-K; In the United States District Court for the Northern District of Texas, Dallas Division.  Debtor's arraignment on those criminal charges is set for August 27, 2024.  *See* Case No. 3:24-cr-00170-K-1 in the United States District Court for the Northern District of Texas at Dkt. No. 6.

## IV.    ATTORNEYS' FEES AND EXPENSES

25.    From January 1, 2022 to April 26, 2022 (the "Compensation Period"), Webster's counsel at Baker Botts were required to invest significant time, skill, and labor to prepare and pursue to a successful conclusion the Involuntary Petition and the directly related and necessary Emergency Interim Trustee Motion and Emergency Motion to Compel Entry of Order for Relief.  In doing so, Webster incurred attorneys' fees in the amount of $323,898.24 and expenses in the amount of $6,688.61.  *See* **Exhibit J**, McElvy Decl. ¶ 22–23.  Specifically, Webster incurred attorneys' fees and costs during the Compensation Period for (i) investigating the legal and factual basis for filing the Involuntary Petition; (ii) preparing and filing the Involuntary Petition; (iii) investigating the legal and factual basis for appointment of an interim trustee and preparing and filing the Emergency Interim Trustee Motion; (iv) coordinating with other petitioning creditors on the Involuntary Petition and the Emergency Interim Trustee Motion; (v) conferring with the Debtor pre- and post-petition on the Emergency Interim Trustee Motion; (vi) preparing for the emergency hearing on the Involuntary Petition and Emergency Interim Trustee Motion; (vii) researching, preparing and filing the Emergency Motion to Compel Entry of Order for Relief; and (viii) preparing for and conducting the hearing on the Emergency Motion for Entry of Order for Relief and submitting the necessary form of order to the Court following the hearing.  *Id.* at ¶ 19.

26.    The invoices attached hereto as **Exhibit D** reflect the following information for the services of Webster's counsel during the Compensation Period:  (a) the number of hours worked by

each attorney and staff member on a particular day; (b) the manner and type of work performed by each attorney and staff member; (c) the customary billing rate for each person rendering service in this matter; and (d) the monetary value assigned to each task performed by a given attorney and/or staff member.  *See* **Exhibit D**, January – April 2020 Invoices.  Consistent with past practice for invoices in the State Court Action, Webster did not require the time spent for each task to be specified in his invoices for the Bankruptcy Case.  *See* **Exhibit J**, McElvy Decl. ¶ 31.  However, the time and cost entries that form the basis of the recovery sought in this Application clearly relate to the Involuntary Petition, the Emergency Interim Trustee Motion, and the Emergency Motion to Compel Order for Relief and, where applicable, have been reduced to account for unrelated time.  *Id.* Additionally, Webster's counsel at Baker Botts applied a 25% discount to the rates charged Webster for their work on same.  *Id.*

27.    Webster's counsel has segregated its time spent on this engagement into the following categories:  (i) Fact gathering, investigations and research: 95.1 hours for total fees of $62,401.20; (ii) Drafting and attention to court filings for pleadings, briefs and exhibits/witness lists: 191.8 hours for total fees of $138,955.66; (iii) Preparation for and appearance at the hearing on Emergency Motion for Entry of Order for Relief and follow-up on same: 27.9 hours for total fees of $23,618.25; and (iv) Preparation for and appearance at hearing on Involuntary Petition and Emergency Motion for Appointment of Interim Chapter 7 trustee and follow-up regarding same: 147.58 hours for total fees of $98,923.13.  *Id.* at ¶ 21–22; *see also* Invoices, **Exhibit D**.

28.    The primary expenses were for copies and online research, mailing, hearing expenses and filing fees.  Computer research is charged at the provider's cost, and other charges such as postage, overnight mailings and hearing expenses are charged at actual cost.  *See* **Exhibit J**, McElvy Decl. ¶ 23.

29.    Webster requests approval and allowance of an administrative expense claim in the amount of $330,856.85, representing the reasonable fees and expenses incurred by his counsel for services rendered during the Compensation Period, as reflected in the invoices in **Exhibit D** and after application of fee discounts.  This amount is comprised of professional fees in the amount of $323,898.24 and expenses in the amount of $6,688.61.

30.    As detailed in the invoices at **Exhibit D**, Webster's counsel and other professionals spent a total of 529.0 hours working on this engagement during the Compensation Period.  The administrative claim sought herein is for a total of 462.3 hours of work.  The difference in hours relates to tasks that were not directly related to the Involuntary Petition or the Emergency Interim Trustee Motion.

31.    Although Debtor later sought to convert this case into a Chapter 11 bankruptcy, which forced Webster to incur over $78,000 in additional fees and expenses to defeat it for the benefit of the estate, this administrative claim does not include any fees or expenses incurred after the date of the order for relief on the Involuntary Petition—April 26, 2022.

## V.    BASIS FOR RELIEF

32.    Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code grant petitioning creditors an administrative expense claim for expenses incurred by them in connection with the filing of an involuntary petition under Section 303 of the Bankruptcy Code.  Those sections provide in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under 502(f) of this title, including–…
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–
>
> (A) a creditor that files a petition under section 303 of this title; …

14

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;….

11 U.S.C. §§ 503(b)(3)–(4).

33.    Accordingly, when a creditor files an involuntary petition that successfully results in the entry of an order for relief, the creditor may seek recovery of its fees and costs, including attorneys' fees, related to the preparation and adjudication of the involuntary petition through such time as an order for relief is entered.  *See In re HovdeBray Enterprises,* 499 B.R. 333, 337 (Bankr. D. Minn. 2013); *In re Crazy Eddie, Inc.,* 120 B.R. 273, 277-78 (Bankr. S.D.N.Y. 1990); *In re Key Auto Liquidation Ctr., Inc.,* 384 B.R. 599, 605-06 (Bankr. N.D. Fla.2008).

34.    Attorneys' fees are recoverable under sections 503(b)(3)(A) and (b)(4) for activities such as the "preparation and filing of the involuntary petition, contacting other creditors to join in the petition, discovery, legal and factual research regarding the grounds for filing the case and, if entry of an order for relief is contested by the debtor, litigation of the issue of whether an order for relief should be entered."  *In re Westek Georgia, LLC,* 317 B.R. 567, 570 (Bankr. M.D. Ga. 2004) (citing 4 *Collier on Bankruptcy,* ¶ 503. 10.[2] (15th ed. rev. 2004)).  The date of entry of the order for relief is considered the cut-off for administrative expenses based on the commencement of an involuntary bankruptcy.  *In re Indian Motorcycle Apparel and Accessories Co.*, 174 B.R. 659, 663 (Bankr. D. Mass.1994) ("The services associated with the filing of an involuntary petition necessarily include consultation with petitioning creditors and coordination of their joint venture. Those services also include the actual preparation of the involuntary petition and effectuation of service of process . . . .  However, once the Order for Relief enters and becomes final, legal services associated with the filing of the involuntary petition are completed.") (internal citations omitted).

15

Furthermore, it is irrelevant whether the creditor is seeking reimbursement for attorneys' fees that have been previously paid, as opposed to fees that remain due and owing. *In re Westek,* 317 B.R. at 571 ("Debtor filed an objection to the application. Debtor notes that Applicants have already paid their professionals and are merely seeking reimbursement. The Court is not persuaded that this should affect Applicants entitlement.").

### A.   <u>Standard of Review</u>

35.     Section 503(b)(3)(A) "conclusively presumes" that creating a case and bringing assets within the court's jurisdiction is beneficial to creditors and does not require that a petitioning creditor prove "the outcome of the case was more beneficial to creditors than the result that might have obtained had no case been filed." *Id.* at 569–70 (citing 4 *Collier On Bankruptcy* ¶ 503.10[2][a] (15th ed. rev.2004)); *see also In re Key Auto Liquidation*, 384 B.R. at 604 ("The purpose of §§ 503(b)(3)(A) and 503(b)(4) is to reimburse petitioning creditors for the costs associated with successfully filing and prosecuting an involuntary petition—a valuable service that brings the debtor into court so that its assets can be equitably marshaled before they are squandered").

36.     When an administrative expense claim for attorneys' fees is sought under Bankruptcy Code § 503(b)(4), "[t]he requirements pursuant to 11 U.S.C. § 330 for documenting how time was expended are applicable to fee applications under section 503(b)." *In re Stoecker,* 128 B.R. 205, 209 (Bankr. N.D. Ill. 1991) (citing 3 *Collier on Bankruptcy* ¶ 503.04[4] at 503-51 (15th ed. 1991)). Specifically, § 330 provides, inter alia, that the allowance of professional compensation should be based upon:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. 330(a)(3).

37.     As shown herein, Webster's efforts on behalf of himself and the other petitioning creditors successfully resulted in the entry of an Order for Relief on the Involuntary Petition and the appointment of an interim trustee on an emergency basis.  This was extraordinary relief on both counts.  *See In re Diamondhead Casino Corp.*, 540 B.R. 499, 504 (Bankr. D. Del. 2015) ("An involuntary petition is an extreme remedy with serious consequences to the alleged debtor…. An even more extreme remedy—the appointment of an interim trustee—is permitted by section 303(g) of the United States Bankruptcy Code, 'if necessary to preserve the property of the estate or to prevent loss to the estate.'") (quoting 11 U.S.C. § 303(g)).   Consequently, the Debtor—an admitted serial fraudster—is now forced to account to all of his creditors who, combined, have come forward with over $22.4 million in claims (including Webster's unsecured judgment claim).  *See* Bankruptcy Case, Claims Register.  Quite simply, but for Webster's extraordinary and highly successful efforts, there would be no bankruptcy case, no interim trustee during the gap period, no trustee, no special counsel to the trustee working on a contingent fee basis, and likely no recovery by any except a handful of lucky creditors.   Under the standards promulgated by the Fifth Circuit, Webster is

therefore entitled to an administrative expense claim for the reasonable attorneys' fees and expenses incurred in filing and adjudicating the Involuntary Petition and the related and necessary Emergency Interim Trustee Motion.

**B.**   *First Colonial* **Factors**

38.   In support of this Application, Webster respectfully directs the Court's attention to those factors generally considered by Bankruptcy Courts in awarding compensation to professionals, as enumerated in § 330 of the Bankruptcy Code and developed by caselaw.   The controlling authority in the Fifth Circuit is *Matter of First Colonial Corporation of America,* 544 F.2d 1291 (5th Cir. 1977) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).   *First Colonial* identified twelve (12) factors that should govern this Court's decision regarding this Application.   Applied to the services of Webster's counsel in this Bankruptcy Case, and as explained in further details in the Declaration of Meghan McElvy in support of this Application, those factors are addressed as follows:

     a.   Time and Labor Required.   The invoices attached at **Exhibit D** detail the involvement of the Webster's counsel attorneys in the Bankruptcy Case during the Compensation Period.   The Compensation Period spans approximately four (4) months wherein a total of 462.3 hours of attorney and staff time was expended in this Bankruptcy Case in relation to the Involuntary Petition and the directly related and necessary Emergency Interim Trustee Motion and Emergency Motion to Compel Entry of Order for Relief.   All of the services performed are compensable in that they represent actual and necessary services performed in preparing, filing, and adjudicating those filings. *See generally* **Exhibit J**, McElvy Decl.   In particular, Webster's counsel was forced to prepare for a two-day hearing involving multiple witnesses and extensive

documentary evidence for the Emergency Interim Trustee Motion because of the inability to reach an agreement with the Debtor until the eve of the hearing. *Id.* at ¶ 18. Moreover, Judge Hale agreed with Webster's counsel as to the Emergency Motion to Compel Entry of Order for Relief and entered the Order for Relief on April 26, 2022. *Id.* at ¶ 10.

b. <u>Novelty and Difficulty of Questions Presented.</u> As set out above, Dennis James Rogers, II, is no ordinary Chapter 7 debtor and the Bankruptcy Case was not an ordinary involuntary bankruptcy proceeding. Many of the tasks reflected in the invoices attached as **Exhibit D** involved factual and legal questions which were of moderate to high difficulty because of the circumstances of the Debtor's pre-petition conduct. *Id.* at ¶ 15–20. Other bankruptcy courts have noted that appointment of an interim trustee is an "even more extreme remedy" than the grant of an involuntary petition and that such requests are rare. *In re Diamondhead Casino Corp.*, 540 B.R. at 505 ("There is limited case law applying section 303(g), no doubt because the request for such relief is rare.").

c. <u>Skill Requisite to Perform Service.</u> A practitioner unfamiliar with complex commercial litigation and bankruptcy law, including involuntary bankruptcies, would have been required to spend considerably more hours than Webster's counsel and professional staff to perform the same tasks. This is especially true considering that Webster's counsel had also handled the underlying State Court Action against the Debtor and were able to leverage the post-judgment discovery they obtained in that case to support the Involuntary Petition and the Emergency Interim Trustee Motion.

d.  <u>Preclusion of Other Employment Due to Acceptance of Case</u>.  Webster's counsel did
not decline any representation solely because of their services in the Bankruptcy
Case.

e.  <u>Customary Fee</u>.   The hourly rates sought herein are commensurate with the rates
charged and approved in other bankruptcy proceedings pending during the relevant
period in the Northern District of Texas and the Southern District of Texas in 2022.
Additionally, Webster's counsel at Baker Botts applied a significant *25% discount* to
those rates, which substantially reduced the fees Webster incurred.  *See* **Exhibit J**,
McElvy Decl. ¶ 13.  As additional support of the reasonableness of the rates charged,
Webster refers the Court to the following:   **Exhibit E**, Declaration of David R.
Eastlake in Support of Creditor Steven A. Webster's Motion for Sanctions, at Exhibit
1 (Dkt. No. 90 (#9)) (Valeo Partners Attorney Hourly Rate and AFA Database for
2021 Texas Partners and Associates) (reflecting hourly rates for attorneys ranging
from $1,825 to $206 per hour); **Exhibit F**, Final Fee Application of Vinson & Elkins
LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from March
9, 2022 through June 10, 2022 filed in Case No. 22-90000 (MXM) in the Northern
District of Texas, styled *In re Rockall Energy Holdings, LLC et al.* (reflecting average
hourly rate of $867.35 for professionals and $310 for paraprofessionals, and a range
of billing rates for attorneys of $590.00 to $1,465.00); **Exhibit G**, First Interim and
Final Fee Application of Weil, Gotshal & Manges LLP as Special Counsel to the
Special Litigation Committee of the Board of Directors of Rockall Energy Holdings,
LLC for Allowance of Compensation and Reimbursement of Expenses for the Period
of March 9, 2022 Through and Including June 10, 2022 filed in Case No. 22-90000

(MXM) in the Northern District of Texas, styled *In re Rockall Energy Holdings, LLC et al.* (reflecting blended rate for all attorneys of $1,157.93 and blended rate for all timekeepers of $1,083.97, and a range of billing rates for attorneys of $695 to $1,475 per hour); **Exhibit H**, Fifth Interim and Final Fee Application of Katten Muchin Rosenman LLP for Allowance and Payment of Fees and Expenses as Attorneys to Debtor GWG Holdings, Inc., on Behalf of and At the Sole Direction of the Independent Directors, for the (I) Fifth Interim Fee Period from May 1, 2023 Through and Including June 20, 2023, and (II) Total Fee Period from June 20, 2022 Through and Including June 20, 2023 filed in Case No. 22-90032 (MI) in the Southern District of Texas, styled *In re GWG Holdings, Inc. et al*. (reflecting average hourly rate for attorneys of $1,249.44 and average hourly rate for paraprofessionals of $460); **Exhibit I**, Third Interim and Final Fee Application of Paul Hastings LLP, Counsel to Sean Clements and the Conflicts Committee of the Board of Directors of GWG DLP Funding IV, LLC, for Allowance and Payment of Fees and Expenses for the Period from May 1, 2023 through June 19, 2023 filed in Case No. 22-90032 (MI) in the Southern District of Texas, styled *In re GWG Holdings, Inc. et al*. (reflecting average hourly rate for professionals of $1,389 and average hourly rate for paraprofessionals of $540).

f.   As set out in **Exhibit J**, Declaration of Meghan McElvy, the hourly rates charged, hours billed and total amounts billed by the attorneys and staff of Webster's counsel who worked on the Bankruptcy Case are as follows:[3]

---

[3]   All of the professionals and staff presented in this Motion were employed by Baker Botts L.L.P. during the Compensation Period.

| Name and Position of Professional Person | Department and Date/State of First Admission (if applicable) | Hourly Billing Rate | Total Billed Hours | Total Amount Billed[4] |
|---|---|---|---|---|
| David R. Eastlake, Partner | Financial Restructuring, 2007 New York | $1,305 | 112.48 | $113,399.61 |
| Travis Sales, Partner | Litigation, 1987 Texas | 1,350 | 9.50 | $ 9,618.75 |
| Meghan McElvy, Partner | Litigation, 2008 Texas | $1,130 | 74.05 | $ 64,729.23 |
| Kristen M. Jacobsen, Associate | Financial Restructuring, 2017 Texas | $860 | 82.80 | $ 53,406.00 |
| Christopher Tutunjian, Associate | Litigation, 2018 Texas | $860 | 62.70 | $ 41,512.20 |
| Emily Rohles | Litigation, 2021 Texas | $580 | 31.40 | $ 14,021.50 |
| Rory Fontenla | Senior Paralegal | $410 | 67.4 | $ 21,740.25 |
| Jessica Aquino | Paralegal | $370 | 1.20 | $    351.50 |
| Kendall Sherman | Paralegal | $370 | 2.20 | $    610.50 |
| Christine Davis | Research Librarian | $270 | 0.20 | $      40.50 |
| Cynthia Montalvo | Research Librarian | $270 | 8.10 | $  1,798.20 |
| Richard Pravata | Research Librarian | $270 | 2.10 | $    425.25 |
| Christi Acciarri | Litigation Graphics | $365 | 8.20 | $  2,244.75 |
| | | **Total** | **462.3** | **$323,898.24** |

Furthermore, as noted above, Webster's counsel applied a significant 25% discount to the fees charged to Webster for the work related to the Involuntary Petition, the Emergency Interim Trustee Motion, and the Emergency Motion to Compel Order for Relief, further demonstrating their reasonableness. *See* **Exhibit J**, McElvy Decl. ¶ 21–29.

g.  <u>Whether the Fee is Fixed or Contingent</u>.  Webster's counsel's fees are fixed insofar as their compensation in the Bankruptcy Case is based upon the hours billed at the

---

4        Total Billed amount includes a 15% discount for January 2022 fees of **$1,489.80**, a 25% discount for March 2022 fees of **$83,114.03** and a 25% discount for April fees of **$12,814.31**.

above-specified rates.  There has not at any point been a contingent fee agreement with Webster.

h.  <u>Time Limitations Imposed by Client or Other Circumstances</u>.  The circumstances of the Bankruptcy Case imposed time pressures due to the nature of the Debtor's assets, liabilities and pre-petition conduct and the significant concern of dissipation of assets.

i.  <u>Amount Involved and Results Obtained</u>.  Webster, with the assistance of his counsel, successfully prepared, filed, and adjudicated the Involuntary Petition and Emergency Interim Trustee Motion which resulted in the appointment of an Interim Trustee and the entry of an Order for Relief with the hope that these actions will result in a meaningful distribution to the Debtor's creditors.

j.  <u>Experience, Reputation and Ability of Attorneys</u>.  Mr. Eastlake and Ms. Jacobsen specialized almost exclusively in the practice of bankruptcy law, including the representation of debtors in possession, official and ad hoc committees, significant creditors and secured lenders in complex Chapter 11 reorganization cases, Chapter 7 liquidations, out-of-court restructurings and commercial and bankruptcy-related litigation matters.  The other attorneys involved in the Bankruptcy Case have extensive experience in complex commercial litigation matters.  Moreover, Ms. McElvy served as lead counsel in the State Court Action against the Debtor, which provided valuable institutional knowledge to the Bankruptcy Case team and increased the overall efficiency of their work.  The reputation of Baker Botts L.L.P. attorneys is recognized and respected in the community.

k.  <u>Undesirability of Case</u>.  There was nothing undesirable about this case.

l.  <u>Nature and Length of Professional Relationship with Client</u>.  Webster's counsel, acting through Ms. McElvy, represented Webster in the State Court Action since June 2020, or for a little less than two years prior to commencement of the Bankruptcy Case.

m.  <u>Award in Similar Cases</u>.  Involuntary Chapter 7 bankruptcy cases are unusual, and even moreso Chapter 7 bankruptcies involving appointment of an interim Chapter 7 trustee—both of which occurred in this case.  Webster's counsel are not aware of any other similar, recent cases in this District involving these unique circumstances. Nonetheless, Webster's counsel believes that the fees requested herein are commensurate with those that have been awarded in other bankruptcy cases pending in this District during the Compensation Period.  *See* **Exhibit J**, McElvy Decl. ¶ 23.

**WHEREFORE, PREMISES CONSIDERED,** Webster respectfully requests that the Court enter an order granting this Application in the form attached hereto, awarding Webster an administrative expense claim as set forth herein for reasonable attorneys' fees of $323,898.24 and expenses of $6,688.61, and granting Webster such other and further relief to which he may be justly entitled, at law or in equity.

Respectfully submitted this the 14th day of August, 2024.

/s/ *Meghan Dawson McElvy*
Meghan Dawson McElvy
Texas State Bar No. 24065127
Bradley Arant Boult Cummings LLP
600 Travis Street, Suite 5600
Houston, Texas 77002
Tel. 713.576.0314
mmcelvy@bradley.com

George H. Barber
Texas State Bar No. 01705650
Bradley Arant Boult Cummings LLP
Fountain Place
1445 Ross Ave., Suite 3600
Dallas, TX 75202
Telephone: 214.257.9800
gbarber@bradley.com

***ATTORNEYS FOR STEVEN WEBSTER***

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 13, 2024, I emailed Ken Hill, as counsel for Areya Holder, Chapter 7 Trustee, to confer regarding the relief sought in this Application.  Mr. Hill advised that the Trustee is opposed to the relief sought in this Application.

/s/ *Meghan Dawson McElvy*
Meghan Dawson McElvy

## PROFESSIONAL CERTIFICATION

I hereby certify (a) that I am the professional with responsibility to verify compliance with the Guidelines for Compensation and Expense Reimbursement of Professionals as promulgated in the United States Bankruptcy Court for the Northern District of Texas ("Guidelines"); (b) I have read the Application; (c) to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the Guidelines except as otherwise specifically noted in the Application; and (d) the compensation and expense reimbursement requested were billed at rates, in accordance with practices, no less favorable than those customarily employed by Baker Botts L.L.P. during 2022 and generally accepted by Baker Botts' clients during 2022.

/s/ *Meghan Dawson McElvy*
Meghan Dawson McElvy

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2024, I caused a true and correct copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas by electronic mail.  Concurrently with the ECF filing, I also caused a notice of the foregoing filing, including its summary details and instructions on how any party in interest may obtain a hard copy of it free of charge, to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas by electronic mail and by first class mail, postage prepaid, on the persons and entities set forth on the attached service list.  Furthermore, I certify that I caused a true and correct copy of the foregoing to be served by U.S. mail, postage prepaid, upon the Debtor and the Office of the United States Trustee.

/s/ *Meghan Dawson McElvy*
Meghan Dawson McElvy

Label Matrix for local noticing
0539-3
Case 22-30500-swe7
Northern District of Texas
Dallas
Tue Aug 13 16:07:36 CDT 2024

Dallas County
Linebarger Goggan Blair & Sampson, LLP
c/o Sherrel K. Knighton
2777 N Stemmons Frwy, Suite 1000
Dallas, TX 75207-2328

Frost Bank
c/o Karl Dial
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201-2794

(p)JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
SAINT CLOUD MN 56302-7999

JPMorgan Chase Bank, N.A.
c/o Suyash Agrawal
Massey & Gail LLP
50 E. Washington Street, Suite 400
Chicago, IL 60602-2100

Mandarin Capital, LLC
2600 Cecil Drive
Holladay, UT 84124-2906

U.S. Attorney
1100 Commerce, 3rd Floor
Dallas, TX 75242-1074

U.S. Attorney General
Department of Justice
Washington, DC 20001

(p)WILDCAT LENDING FUND ONE  LP
4800 DEXTER DRIVE
PLANO TX 75093-5505

1100 Commerce Street
Room 1254
Dallas, TX 75242-1305

ACMC Finance and Trade Joshua Kluewer
1055 W. 7th Street Suite 336
4 Los Angles, CA 90017-2577

ACMC Finance and Trade LLC
2820 Lucerne Avenue
Miami Beach Florida 33140-4267

American Express
P.O Box 650448
Dallas, TX 75265-0448

Andre Leblanc
P. O. Box 82009
Lafayette, LA 70598-2009

Angela Garbiso
Schneider Miller Reynolds, P.C. David Mi
300 N. Coit Rd., Suite 1125
Richardson, TX 75080-5535

Apple Card
P.O Box 7247
Philadelphia, PA 19170-6112

BAMCG Bridge Partners LP
13800 Seniac Dr. Ste 200
Dallas, TX 75234-8823

Bank of America
P.O Box 15019
Wilmington, DE 19850-5019

Brent Bohn
1775 N Martin L King Blvd
Las Vegas, NV 89106-2101

Carolyn Guilbeau Perry
530 Catholique Road
Carencro LA 70520-5603

Carolyn Perry
3914 75th Place
Lubbock, TX 79423-1128

Chase Bank
P.O Box Carol Strem
IL 60197-6294

Dallas County John R. Ames,
CTA 500 Elm Street
Dallas, TX 75202-3304

David Meche
5121 Johnston St.
Lafayette, LA 70503-5157

Debra & Russell Van Cleve Schneider Miller R
300 N Coit Rd., Suite 1125
Richardson, TX 75080-5535

Dennis J. Woods
c/o Meghan McElvy
Chase Tower
600 Travis Street, Suite 5600
Houston, TX 77002-2909

Dennis Rogers Sr.
County Rd 250
Durango, CO 81301

Discover Bank
P.O. Box 3025
New Albany, Oh 43054-3025

Discover Card
P.O Box 30666
Salt Lake City, UT 84130-0666

Eamonn J. Wiles
801 Cherry Street
Suite 2000
Fort Worth, TX 76102-6882

Eamonn J. Wiles
Decker Jones, P.C.
801 Cherry Street, Unit #46
Fort Worth, TX 76102-6803

Ellis Guilbeau
2014 Beau Bassin Rd
Lafayette, LA 70520-5936

Frost Bank
P.O Box 1600
San Antonio, TX 78296-1600

Funderz.net 1022 Ave M
Floor 2
Brooklyn, NY 11230

Gerard Ballanco Jr
611 East Prudhomme St.
Opelousas, LA 70570-6458

Gerard Ballanco Jr.
460 Judice Rd
Sunset, Louisiana 70584-5156

Goldman Sachs
100 Crescent Court
Dallas TX 75201-7893

Holland & Hart
222 S. Main St. #2200
Salt Lake City UT 84101-2194

Infinity Global Fuel, Inc
5100 Westheimer Suite 200
Houston, TX 77056-5597

John & Ronda Harris
231 Ramblewood Dr.
Lafayette, LA 70508-7403

John Foreman
1819 Pinhook Road Suite 215
Lafayette, LA 70508-3700

John Hughes
2000 Kaliste Saloom Road Suite 400
Lafayette, LA 70508-6180

John S. Foreman III and Andre C. Leblanc
Attn: J. Mark Chevallier, Esq.
McGuire, Craddock & Strother, P.C.
500 N. Akard St., Suite 2200
Dallas, TX 75201-3317

Justin Leemay TFRE Investments LLC
1831 W Crest Ridge Rd.
Lehi, UT 84043-7757

Kathy Rogers
County Rd 250
Durango, CO 81301

Kenneth Guilbeau
P.O Box 700
Carencro, LA 70520-0700

Kenneth and Shawna Guilbeau
3185 Highway 178
Sunset LA 70584-5116

Lincoln Automotive Financial Services
P.O Box 650574 Dallas
TX 75265-0574

Lincoln Automotive Financial Services
c/o Wilcox Law, PLLC
P.O. Box 201849
Arlington, TX 76006-1849

Linda Brown
5340 Gooseberry Way
Oceanside, CA 92057-4629

Linda Brown
6545 Sequence Drive
San Diego, CA 92121-4363

MCPP Park District Residential
2711 N. Haskell Ave Suite 2400
Dallas, TX 75204-2926

Mandarin Capital LLC
2100 Ross Ave., Suite 2700
Dallas, TX 75201-7919

Mandarin Capital, LLC
2290 E. 4500 S #260
Salt Lake City, UT 84117-4494

Mandarin Capital, LLC
Lynn Pinker Hurst & Schwegmann LLP
2100 Ross Avenue, Ste. 2700
Dallas, TX 75201-7919

Mccathern Law Firm
3710 Rawlins Street Suite 1600
Dallas, TX 75219-4258

Noor Concepts
555 E 5th Street Apt 3022
Austin, TX 78701-4153

Noor Concepts LLC
c/o Nicoud Law
10440 N. Central Expressway
Suite 800
Dallas, TX 75231-2264

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

Perry Judice Russell Devenport
McDonald Sanders, P.C.
777 Main Street, Suite 1300
Fort Worth, TX 76102-5385

Raymond McKaskel
1216 Ridgewood Place
Houston, TX 77055-5048

Raymond McKaskla
1216 Ridgewood Place
Houston, TX 77055-5048

Scott Faulkner
683 O Lakehurst Avenue
Dallas, TX 75230

Steven A Webster David R. Eastlake Baker Bot
910 Louisiana St.
Houston, TX 77002-4916

Steven A. Webster, Aaron Webster, and Dennis
c/o George H. Barber
BRADLEY ARANT BOULT CUMMINGS LLP/ Founta
1445 Ross Avenue, Suite 3600
Dallas, TX 75202-2761

Steven Wang
20 Camelot Rd.
Windham NH 03087-1632

Steven Webster
c/o Meghan McElvy
Chase Tower, 600 Travis Street, Suite 56
Houston, TX 77002-3009

Synchrony Bank
P.O Box 965003
Orlando, Fl 32896-5003

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk VA 23541-1021

Tony May
1850 E. Sahara Ave. Suite 206
Las Vegas, NV 89104-3746

Troya L Montgomery
350 Ambroise
Newport Coast, CA 92657-0127

Troya Montgomery
350 Ambroise
Newport Coast, CA 92657-0127

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-0996

WeWork
115 W 18th St
New York, NY 10011-4113

Wildcat Lending
4800 Dexter Drive
Plano Plano, TX 75093-5505

Angela Garbiso
c/o David Miller
Schneider Miller Reynolds, P.C.
300 N. Coit Road, Suite 1125
Richardson, TX 75080-5535

Areya Holder
Areya Holder, Trustee
Law Office of Areya Holder, PC
PO Box 2105
Addison, TX 75001-2105

Brandon J Gibbons
FUNDERZ.NET, LLC
C/O Padfield & Stout, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, TX 76102-3792

Debra A. Van Cleve
c/o David Miller
Schneider Miller Reynolds, P.C.
300 N. Coit Road, Suite 1125
Richardson, TX 75080-5535

Dennis James Rogers II
6520 Del Norte Lane
Dallas, TX 75225-2619

Ellis Guilbeau
c/o Russell Devenport
777 Main St
Suite 2700
Fort Worth, TX 76102-5366

Eric Liepins, PC
12770 Coit Raod
Suite 850
Dallas, TX 75251-1364

Eric A. Liepins
Legal Aid of Northwest Texas
1515 Main Street
Dallas, TX 75201-4841

John O. Harris
c/o Russell Devenport
777 Main Street
Suite 2700
Fort Worth, TX 76102-5366

Kenneth Guilbeau
c/o Russell Devenport
777 Main St
Suite 2700
Fort Worth, TX 76102-5366

Michael H. Moghimi
c/o Nicoud Law
10440 N. Central Expwy.
Suite 800
Dallas, TX 75231-2264

Raymond McKaskle
c/o Russell Devenport
777 Main Street
Suite 2700
Fort Worth, TX 76102-5366

Ronda A. Harris
c/o Russell Devenport
777 Main Street
Suite 2700
Fort Worth, TX 76102-5366

Russell Van Cleve
c/o David Miller
Schneider Miller Reynolds, P.C.
300 N. Coit Road, Suite 1125
Richardson, TX 75080-5535

Shawna Guilbeau
c/o Russell Devenport
777 Main St, Suite 2700
Fort Worth, TX 76102-5366

Shawna Guilbeau Perry
c/o Russell Devenport
777 Main St, Suite 2700
Fort Worth, TX 76102-5366

Steven L. Webster
c/o David R. Eastlake
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002-4995


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
ST CLOUD, MN 56302-9617

Wildcat Lending Fund One, LP
4800 Dexter Drive
Plano, TX 75093

(d)Jefferson Capital Systems, LLC
PO Box 7999
St. Cloud, MN 56302-9617


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)ACMC Finance and Trade LLC

(u)BAMCG Bridge Partners LP

(u)Dortch Lindstrom Livingston Law Group


(u)FUNDERZ.NET, LLC

(u)Goldman Sachs & Company LLC

(u)John S. Foreman, III


(u)Lincoln Automotive Financial Services

(u)Quilling, Selander, Lownds, Winslett & Mos

(u)Schneider Miller Reynolds, P.C.


(d)John and Ronda Harris
231 Ramblewood Dr.
Lafayette, LA 70508-7403

(d)Mandarin Capital
2600 Cecil Drive
Holladay UT 84124-2906

(u)Allison Rogers


(u)Andre C. Leblanc

End of Label Matrix
Mailable recipients    91
Bypassed recipients    13
Total                 104

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Case Number 22-30500-swe7** |
| | ) | **(Involuntary Proceeding)** |
| **DENNIS JAMES ROGERS, II,** | ) | |
| | ) | |
| | ) | |
| **Debtor.** | | |

## [PROPOSED] GRANTING STEVEN WEBSTER'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(3)(a) and (4)

On this date, the Court considered the Application for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(3) and (4) (Dkt. No. _____, the "*Application*") filed by Steven Webster ("Webster") seeking allowance of an administrative expense claim for the attorneys' fees and expenses incurred in connection with the Involuntary Petition filed against Dennis James Rogers, II. The Court, after considering the Application and supporting evidence, the applicable law, the arguments of counsel, if any, and all other supporting or opposing papers, has determined that: (i) notice of the Motion was appropriate and sufficient under the circumstances; (ii) the amounts sought in the Motion as an administrative expense were actual, necessary expenses incurred by Webster as a petitioning creditor under 11 U.S.C. § 303, including reasonable compensation for

1

attorneys' fees based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under the Bankruptcy Code.  Accordingly, the Court finds that the Application should be granted.

It is therefore ORDERED that:

1.    The Application is hereby GRANTED.

2.    Webster is hereby awarded an administrative expense claim pursuant to 11 U.S.C. § 503 for the reasonable attorneys' fees and expenses incurred in connection with the Involuntary Petition in the total amount of $330,586.85, of which $323,898.24 is awarded for compensation of attorneys' fees and $6,688.61 is awarded for reimbursement of expenses to Webster's counsel.

3.    The Trustee shall be and hereby is authorized to immediately pay Webster the full amount of fees and expenses approved herein.

# # # End of Order # # #

Submitted by:

Meghan Dawson McElvy
Texas State Bar No. 24065127
Bradley Arant Boult Cummings LLP
600 Travis Street, Suite 5600
Houston, Texas 77002
Tel. 713.576.0314
mmcelvy@bradley.com

George H. Barber
Texas State Bar No. 01705650
Bradley Arant Boult Cummings LLP
Fountain Place
1445 Ross Ave., Suite 3600
Dallas, TX 75202
Telephone: 214-257-9800
gbarber@bradley.com

*ATTORNEYS FOR STEVEN WEBSTER*

2

1/2326698.1