# Exhibit J

Meghan Dawson McElvy
Texas State Bar No. 24065127
BRADLEY ARANT BOULT CUMMINGS LLP
600 Travis Street, Suite 5600
Houston, Texas 77002
Tel. 713.576.0314
mmcelvy@bradley.com

George H. Barber
Texas State Bar No. 01705650
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Phone: (214) 939-8700
Fax: (214) 939-8787
Email: gbarber@bradley.com

*ATTORNEYS FOR STEVEN WEBSTER*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**DENNIS JAMES ROGERS, II,**<br><br>Debtor. | **Case Number 22-30500-swe7**<br>**(Involuntary Proceeding)** |

**DECLARATION OF MEGHAN DAWSON MCELVY IN SUPPORT OF STEVEN WEBSTER'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(b)(3)(a) AND 503(b)(4)**

I, Meghan Dawson McElvy, declare under penalty of perjury as follows:

### Introduction

1. My name is Meghan Dawson McElvy. I am over the age of 21, of sound mind, and fully competent to make this declaration (the "Declaration"). The facts and matters set forth in this Declaration are based upon my personal knowledge and are true and correct. The opinions contained herein are based on my education, training, and experience.

1

2. I submit this Declaration in support of *Creditor Steven Webster's Application for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3) and 503(b)(4)*[1] (the "Application") filed concurrently herewith. Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

3. I am an attorney duly licensed by the State of Texas. I have been licensed to practice law in Texas since November 2009, and I am also admitted to practice in the Southern, Northern, Eastern, and Western Districts of Texas, and the United States Court of Appeals for the Fifth Circuit. I am a partner in the law firm of Bradley Arant Boult Cummings LLP, located at 600 Travis Street, Suite 5600, Houston, Texas 77002 ("Bradley"). I worked at the law firm of Baker Botts L.L.P. ("Baker Botts"), located at 910 Louisiana Street, Houston, Texas 77002, from November 2009 through December 2022. I transferred to Bradley from Baker Botts in December 2022. I am currently practicing law in Houston, Harris County, Texas and have practiced law in Houston, Harris County, Texas since 2009. I am in good standing with the State Bar of Texas.

4. Based on my nearly 15 years of experience practicing law in Texas, I am familiar with the usual and customary rates charged by other attorneys in and around Harris County and Dallas County, Texas (among other areas) for services of a similar nature to those described in this Declaration.

5. In June 2020, Steven Webster ("Webster") retained Baker Botts, with me serving as lead counsel, to pursue Texas state court claims against Dennis James Rogers, II ("Debtor") in Dallas County District Court arising from a fraudulent fuel auction scheme through which Debtor

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meanings as ascribed to them in the Application.

2

stole $4.41 million from Webster and $2.142 million from Webster's associate Dennis Woods, for a total of $6.552 million (the "State Court Action"). Shortly after the State Court Action was filed, Debtor voluntarily and unilaterally returned Woods' $2.142 million, but Webster has never been repaid. The State Court Action was eventually resolved in 2021 through an Agreed Final Judgment that awarded Webster $6.25 million in compensatory damages plus pre- and post-judgment interest. Because Debtor refused to pay the Agreed Final Judgment, I began to pursue post-judgment discovery against him, which the Debtor also refused to answer, invoking the Fifth Amendment. Eventually the judge in the State Court Action overruled the Debtor's objections and compelled him to provide answers. When Debtor still refused to comply with the Court's orders, he was jailed for two weeks for contempt. It was only after his release from jail that we finally received Debtor's post-judgment discovery responses in late 2021 and learned that Debtor owed over $21 million to 28 creditors, all of which he described as "past due." Troublingly, further research confirmed that numerous of those creditors had sued Debtor and obtained judgments or default judgments, including for fraud.

6. Shortly thereafter and as a result of learning the foregoing information, in January 2020, with Webster's consent, my colleagues at Baker Botts and I began working on the Involuntary Chapter 7 Petition against the Debtor (the "Involuntary Petition"). Given the serial fraudulent conduct by Debtor, it became clear that it would be necessary and prudent to simultaneously file an Emergency Motion for Appointment of an Interim Chapter 7 Trustee (the "Emergency Interim Trustee Motion") and to set same for an emergency hearing. I then located three other creditors willing to join Webster as petitioning creditors through one of the lawsuits that had been filed against Debtor (collectively, the "Petitioning Creditors"). Those other petitioning creditors besides

3

Webster were Angela Garbiso and Russell and Debra Van Cleve, and their counsel was (and remains) David Miller of Schneider Miller Reynolds, P.C. ("SMR").

7. I consulted with Mr. Miller to understand the background of his clients' claims and judgments against the Debtor. However, as counsel for Webster, Baker Botts did all of the legal work (research, investigation, drafting, etc.) necessary to prepare the Involuntary Petition and the Emergency Interim Trustee Motion. Mr. Miller with SMR merely reviewed the fully researched and prepared filings and provided assent to them on behalf of his clients. This is further borne out by the fact that none of the other petitioning creditors has, at the time of filing this Declaration, submitted an application for an administrative expense claim under 11 U.S.C. §§ 503(b)(3) and 503(b)(4).

8. On March 22, 2022, we filed the Involuntary Petition and the Emergency Interim Trustee Motion against the Debtor pursuant to 11 U.S.C. § 303 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Case"). Like the State Court Action, I have personal knowledge of this Bankruptcy Case, having participated in and overseen the work performed in connection with the matter for over two years now, and discussed the matter several times along the way with Webster. I remain lead counsel for Webster in the Bankruptcy Case to this day.

9. On April 20, 2022, after the Debtor failed to answer the Involuntary Petition, Webster filed an Emergency Motion of the Petitioning Creditors for Entry of an Order for Relief in an Involuntary Case (the "Emergency Motion to Compel Order for Relief"), along with a motion for expedited hearing on the same.

10. The Court held a hearing on the Emergency Motion to Compel Order for Relief on April 25, 2022, and entered the Order for Relief on April 26, 2022.

11. In the Application, Webster seeks allowance an administrative expense for $330,586.85 for reimbursement of actual and necessary expenses and for legal services rendered during the period from January 1, 2022 through and including April 26, 2023 (the "Involuntary Petition Period"), a summary of which is provided below.

12. I have reviewed the Application filed on Webster's behalf. To the best of my knowledge, the statements contained in the Application are true and correct.

### Billing Process

13. I was (and remain) the billing attorney for the Bankruptcy Case and have reviewed each invoice for work performed on this matter before Baker Botts or Bradley sent the invoice to Webster. I ensured that each time entry was reasonable for each particular task. Where time appeared excessive given the nature of the work, I reduced it or wrote it off completely before the invoice went out. Additionally, Baker Botts applied a substantial 25% discount to the fees charged to Webster in relation to the Involuntary Petition, the Emergency Interim Trustee Motion, and the Emergency Motion to Compel Order for Relief.

14. Webster reviewed each invoice prior to paying Baker Botts, and paid all of the fees and expenses presented in the Application.

### Work Performed

15. While I was a partner at Baker Botts, the Bankruptcy Case was primarily handled by a three-person team including associate Kristen M. Jacobsen, bankruptcy partner David Eastlake, and myself. Associates Christopher Tutunjian and Emily Rohles provided research support. We also had paralegal staff support in Dallas (Rory Fontenla and Jessica Aquino) and in Houston (Kendall Black Sherman). Due to the nature of the research and documentation required to adequately support the Involuntary Petition and the Emergency Interim Trustee Motion, we also

employed the services of Baker Botts' research librarians, including Cynthia Montalvo, Christine Davis and Richard Pravata (who alternated responding to different requests according to their schedules and availability). In order to prepare for the emergency evidentiary hearing on the Involuntary Petition and the Emergency Interim Trustee Motion, which involved several witnesses and over 100 exhibits and was expected to last approximately two days (i.e., a mini-trial), and was not resolved until the last minute on Saturday March 26, 2022 by agreement with Debtor, we also had limited assistance from an evidence graphics specialist, Christi Acciarri. Senior partner Travis Sales was involved to a very limited degree to help examine witnesses as needed at the anticipated two-day emergency evidentiary hearing.

16. The Involuntary Petition and the Emergency Interim Trustee Motion required a significant amount of time, skill, and labor to adequately research and prepare. Not only was it necessary to establish that Debtor was not paying numerous debts as and when they were due, but it was critical to prove up a pattern of fraud to support that an interim trustee was necessary in the gap period to prevent loss to the estate.

17. During the Involuntary Petition Period, Webster's counsel diligently and efficiently provided legal services to Webster as a petitioning creditor that were reasonable, necessary and appropriate. As set out in the Application, after months of legal wrangling to untangle the Debtor's fraudulent schemes, and only after the Debtor had been jailed for two weeks, did the Petitioning Creditors learn that the Debtor had over $21 million in "past due" debts to 28 creditors, little non-exempt personal property and negative annual net income of approximately –$96,000 to –$126,000. Faced with this information and having serious concerns that the Debtor may have absconded with his assets to intentionally put them out of the reach of his creditors, Webster was left with no alternative but to commence this Bankruptcy Case.

18.   Once the Involuntary Petition was on file, the Debtor's long pattern of misleading and deceptive conduct and the serious threat of dissipation of assets forced the Petitioning Creditors to file the Interim Trustee Motion and to request an emergency hearing.  The tangled nature of the Debtor's affairs and illegitimate business dealings increased the complexity of preparing and filing both the Involuntary Petition and the Interim Trustee Motion.  As Webster's counsel, we repeatedly attempted to negotiate a resolution with the Debtor regarding appointment of an Interim Trustee but were unable to reach an agreement until Saturday, March 26, 2022.  As a result, we had to prepare for an anticipated two-day hearing featuring testimony from multiple witnesses and over one hundred potential exhibits.

19.   In sum, Webster incurred attorneys' fees and costs during the Involuntary Petition Period for (i) investigating the legal and factual basis for filing the Involuntary Petition; (ii) preparing and filing the Involuntary Petition; (iii) investigating the legal and factual basis for appointment of an interim trustee and preparing and filing the Emergency Interim Trustee Motion; (iv) coordinating with other petitioning creditors on the Involuntary Petition and the Emergency Interim Trustee Motion; (v) conferring with the Debtor pre- and post-petition on the Emergency Interim Trustee Motion; (vi) preparing for the emergency hearing on the Involuntary Petition and Emergency Interim Trustee Motion; (vii) researching, preparing and filing the Emergency Motion to Compel Entry of Order for Relief; and (viii) preparing for and conducting the hearing on the Emergency Motion for Entry of Order for Relief and submitting the necessary form of order to the Court following the hearing.

20.   These services were necessary to address a multitude of critical issues in support of the Involuntary Petition. It is my belief that Webster's counsel's services have greatly benefitted and helped to maximize the value of the Debtor's estate.  Indeed, but for the expenses Webster alone

shouldered (on top of Debtor refusing to return his $4.41 million), there likely would not be a bankruptcy case, a trustee, special counsel for the trustee to pursue claims on a contingent fee basis, or recovery for anyone except a few lucky creditors.

### Fees and Expenses

21. Webster incurred a total of $323,898.24 in attorneys' fees and $6,688.61 in expenses on Webster's behalf related to the Involuntary Petition and the related Emergency Interim Trustee Motion and Emergency Motion to Compel Order for Relief.

22. The hours worked by the Baker Botts attorneys and the total fees and expenses incurred by Webster are detailed below. It is my opinion that the time and expenses incurred by counsel in its representation of Webster was reasonable and necessary.

| Name and Position of Professional Person | Department and Date/State of First Admission (if applicable) | Hourly Billing Rate | Total Billed Hours | Total Amount Billed[2] |
|---|---|---|---|---|
| David R. Eastlake, Partner | Financial Restructuring, 2007 New York | $1,305 | 112.48 | $113,399.61 |
| Travis Sales, Partner | Litigation, 1987 Texas | 1,350 | 9.50 | $ 9,618.75 |
| Meghan McElvy, Partner | Litigation, 2008 Texas | $1,130 | 74.05 | $ 64,729.23 |
| Kristen M. Jacobsen, Associate | Financial Restructuring, 2017 Texas | $860 | 82.80 | $ 53,406.00 |
| Christopher Tutunjian, Associate | Litigation, 2018 Texas | $860 | 62.70 | $ 41,512.20 |
| Emily Rohles | Litigation, 2021 Texas | $580 | 31.40 | $ 14,021.50 |
| Rory Fontenla | Senior Paralegal | $410 | 67.4 | $ 21,740.25 |
| Jessica Aquino | Paralegal | $370 | 1.20 | $     351.50 |
| Kendall Sherman | Paralegal | $370 | 2.20 | $     610.50 |

---

[2] Total Billed amount includes a 15% discount for January 2022 fees of **$1,489.80**, a 25% discount for March 2022 fees of **$83,114.03** and a 25% discount for April fees of **$12,814.31**.

8

| Christine Davis | Research Librarian | $270 | 0.20 | $ 40.50 |
|---|---|---|---|---|
| Cynthia Montalvo | Research Librarian | $270 | 8.10 | $ 1,798.20 |
| Richard Pravata | Research Librarian | $270 | 2.10 | $ 425.25 |
| Christi Acciarri | Litigation Graphics | $365 | 8.20 | $ 2,244.75 |
| | | Total | 462.3 | $323,898.24 |

| Fees Category | Total Billed Hours | Total Billed Amount[1] |
|---|---|---|
| Fact gathering, investigations, and research | 95.1 | $ 62,401.20 |
| Drafting and attention to court filings for pleadings, briefs and exhibits/witness lists | 191.8 | $138,955.66 |
| Preparation for and appearance at hearing on involuntary petition and emergency motion for appointment of interim Chapter 7 trustee; follow up on same | 147.5 | $ 98,923.13 |
| Preparation for and appearance at hearing on emergency motion for entry of order for relief; follow up on same | 27.9 | $ 23,618.25 |
| | Total | $323,898.24 |

| Expense Category | Amount |
|---|---|
| Filing Fees | $338.00 |
| Records, certified copies | $2,354.12 |
| Hearing related travel and costs | $3,950.36 |
| Mailings | $46.13 |
| Total | $6,688.61 |

23. It is my opinion that these effective hourly rates are customary and reasonable rates for services of the type performed in this matter and are consistent with or lower than those charged by Baker Botts and comparable firms in other similar matters. Furthermore, the primary expenses were for copies and online research, mailing, hearing expenses and filing fees. Computer research is charged at the provider's cost, and other charges such as postage, overnight mailings and hearing

9

expenses are charged at actual cost. In providing reimbursable expenses, Baker Botts did not make a profit on that expense, whether the service was performed in-house or through a third party.

24. Attached as Exhibit E to the Application is the Declaration of David Eastlake that was filed in June 2022 in support of Webster's prior Motion for Sanctions in relation to Debtor's failed Motion to Convert. *See* Dkt. No. 64. Exhibit 1 to Mr. Eastlake's Declaration is a report detailing attorney rates in 2021 from other large law firms in the Dallas, Houston and Austin areas. Additionally, several other fee applications from 2022 reflect similar or higher rates than those charged Webster in relation to the Involuntary Petition, the Emergency Interim Trustee Motion, and the Emergency Motion to Compel Order for Relief. *See* Application at Exhibits F–I. Collectively, these materials demonstrate that the attorneys' fees Webster seeks to recover through the application are reasonable and customary.

### A. Overview of *First Colonial* Factors

25. Based on my 15 years of experience as a Texas complex commercial litigator, and having worked closely with David Eastlake, an experienced Texas restructuring attorney, on the related Emergency Interim Trustee Motion and Emergency Motion to Compel Order for Relief, it is my opinion and testimony that the legal services rendered by Baker Botts in this matter have been reasonable and necessary. It is also my opinion and testimony that the fees charged by Baker Botts for those services have all been reasonable and necessary.

26. In reaching these opinions, I considered the factors set forth in *Matter of First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir. 1977) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)), which include:

- time and labor required;
- novelty and difficulty of the issues;

10

- skill required to perform the legal services properly;
- preclusion of other employment;
- customary fee;
- whether the fee is fixed or contingent;
- time limitations imposed by client or circumstances;
- amount involved and results obtained;
- experience, reputation and ability of the attorneys;
- undesirability of the case
- nature and length of the professional relationship with the client; and
- award in similar cases

27. I am also aware that in determining the amount of reasonable compensation to be awarded, the Court will consider the similar factors set forth in 11 U.S.C. § 330(a)(3). I have likewise taken those factors into account in respect of Webster's Application.

28. Webster's counsel are experienced lawyers with a respected reputation, who worked as efficiently as possible to secure the best result for their clients. In the course of our representation through the date of entry of the Order for Relief, we not only succeeded on the petition for involuntary bankruptcy, but also successfully obtained an interim chapter 7 trustee, who became the Trustee once the petition was granted. The Trustee has since successfully brought funds back into the estate and is continuing to pursue potential recoveries for the benefit of all creditors.

29. It is my opinion that this Court should award Webster $330,586.85, which is the total sum of the reasonable attorneys' fees, costs, and expenses Webster actually incurred in connection with the Involuntary Petition and the related Emergency Interim Trustee Motion and Emergency Motion to Compel Order for Relief.

### B. Segregation of Fees

30. The fees that Webster seeks to recover in the Application were incurred in preparing and pursuing to successful completion the Involuntary Petition, the Emergency Interim Trustee Motion, and the Order for Relief.

31. I have made a good faith effort to segregate out any fees and expenses that were not related to those efforts in the Application. Consistent with past practice for invoices in the State Court Action, Webster did not require the time spent for each task to be specified in his invoices for the Bankruptcy Case. However, the time and cost entries that form the basis of the recovery sought in this Application clearly relate to the Involuntary Petition, the Emergency Interim Trustee Motion, and the Emergency Motion to Compel Order for Relief and, where applicable, have been reduced to account for unrelated time.

### Conclusion

32. Webster incurred a total of $323,898.24 in attorneys' fees and $6,688.61 in expenses related to the Involuntary Petition, the Emergency Interim Trustee Motion, and the Emergency Motion to Compel Order for Relief, for a grand total of $330,586.85. It is my opinion that those are reasonable and necessary amounts that should be approved as an administrative expense for Webster.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed: August 14, 2024
Houston, Texas

/s/ Meghan Dawson McElvy