EXHIBIT 2

FILED
3/4/2021 11:20 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

Cause No. DC-20-01897

| | | |
|---|---|---|
| FUNDERZ.NET LLC | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § § | |
| V. | § | 191st JUDICIAL DISTRICT |
| OMTC, INC., DENNIS JAMES ROGERS, II, AND SITE DEVELOPMENT GROUP, INC. | § § § § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

**PLAINTIFF'S THIRD AMENDED PETITION**

Plaintiff, Funderz.net LLC ("Funderz" or "Plaintiff"), files this Third Amended Petition and would show the Court the following:

**I. SUMMARY OF THE FACTS**

1. Funderz entered into a series of three promissory notes with OMTC, Inc. to finance OMTC Inc.'s purchase of ultra-low sulfur diesel fuel from Calumet Specialty Product Partners, LP. Dennis James Rogers II, OMTC Inc.'s president, personal guarantied payment of the promissory notes. However, despite expressly promising to use the funds from contemplated by the promissory notes to purchase the fuel from Calumet Specialty Product Partners LP, OMTC, Inc. and Rogers instead used the funds to pay Site Development Group, Inc. as well as for other purposes not allowed for under the notes. OMTC, Inc. and Rogers breached the promissory notes both by non-payment and by failing to utilize the funds for the represented purposes, instead fraudulently inducing Funderz into providing the funds. Rather than litigate, OMTC, Inc. and Rogers stated they desired to settle the claims. The parties reached a settlement only for Defendants OMTC, Inc. and Dennis J. Rogers II (collectively, the "OMTC Defendants") to claim a technical breach, repudiate the settlement, and attempt to renegotiate because of the COVID-19 pandemic. However, in the

course of litigation, it was discovered that OMTC, Inc. and Rogers made promises in the Settlement Agreement they were incapable of performing. OMTC, Inc. and Rogers sought a significant discount on the settlement already agreed upon, failed to perform under that settlement agreement, and sought to push repayment back significantly from the point agreed upon. OMTC, Inc. and Rogers drug the settlement process on for weeks, buying themselves further time to hide funds, abscond with Funderz's expected profits, and further benefit from their multi-million-dollar fraudulent scheme.

## II. PARTIES

2. Defendant, OMTC, Inc. ("OMTC"), is a Texas corporation that may be served with process by serving its registered agent, Craig D. Rogers, at 8484 W. Monroe, Houston, Texas 77061 or wherever he may be found.

3. Defendant, Dennis James Rogers II (SSN: Unknown, DL # XXXXXXX814) ("Rogers") is a resident of Texas and may be served with process at 6520 Del Norte Lane, Dallas, TX 75225 or wherever he may be found.

4. Defendant, Site Development Group, Inc. ("SDG"), is a Wyoming Corporation with its principal place of business in California. SDG was previously served with process, failed to answer, and the Court entered an Interlocutory Default Judgment against SDG.

## III. DISCOVERY, JURISDICTION, AND VENUE

5. Pursuant Tex. R. Civ. P. 190, Funderz hereby elects that all discovery shall be conducted under Level II of said rule. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Funderz seeks monetary relief of more than $1,000,000.00. The Court has jurisdiction because the amount in controversy is within the jurisdictional limits of the Court. Further, venue is proper in Dallas County because one or more of the Defendants is a resident of Dallas County, Texas

TRUSTEE 009

pursuant to Texas Civil Practice & Remedies Code § 15.002.

## IV. FACTS

### Promissory Note 1

6. On or about August 29, 2019, OMTC, as Maker, and Funderz, as Lender, entered into a Promissory Note ("Note 1") by which Funderz agreed to provide funds (the "Note 1 Funds") to OMTC for the purchase of the Product, therein defined as ultra-low sulfur diesel, pursuant to a Master Service Agreement and repayable on the earlier of (i) three (3) Business Days following the consummation of the Sale and (ii) the Outside Date as defined by the terms of Note 1. A true and correct copy of Note 1 is attached hereto and incorporated by reference herein as Exhibit "A."

7. As an inducement for Funderz to lend the Note 1 Funds, OMTC executed a Security Agreement ("Security Agreement 1") by which OMTC granted Funderz a first priority security interest in the property set forth in §2 of Security Agreement 1 (the "Security Agreement 1 Collateral"). A true and correct copy of Security Agreement 1 is attached hereto and incorporated by reference herein as Exhibit "B."

8. As further security to Funderz for entering into Note 1, OMTC executed the Collateral Assignment ("Collateral Assignment 1") by which OMTC assigned to Funderz all of its right, title, and interest in a certain Master Supply Agreement dated January 10, 2019, by and between OMTC and Calumet Specialty Product Partners, LP as well as the collateral outlined in Section 2 of the Collateral Assignment ("Collateral 1"). A true and correct copy of Collateral Assignment 1 is attached hereto and incorporated by reference herein as Exhibit "C."

9. On August 29, 2019, to further induce Funderz to enter into Note 1, Rogers executed the Guaranty ("Guaranty 1") by which Rogers unconditionally guaranteed the full and prompt payment of all of OMTC's obligations to Funderz on a continuing basis. A true and correct copy of

Guaranty 1 is attached hereto and incorporated by reference as Exhibit "D." Additionally, as further inducement for Funderz's agreement to enter into Note 1, Rogers executed the Pledge Agreement ("Pledge Agreement 1"), by which he granted Funderz a security interest in and to all of the shares of stock in OMTC as security for Funderz's agreement to provide the Note 1 Funds. A true and correct copy of Pledge Agreement 1 is attached hereto and incorporated by reference herein as Exhibit "E."

**Promissory Note 2**

10. On or about September 10, 2019, OMTC, as Maker, and Funderz, as Lender, entered into a second Promissory Note ("Note 2") by which Funderz agreed to lend additional funds (the "Note 2 Funds") to OMTC for the purchase of the Product, therein defined as ultra-low sulfur diesel pursuant to a Master Service Agreement and repayable on the earlier of (i) three (3) Business Days following the consummation of the Sale and (ii) the Outside Date as defined by the terms of Note 2. A true and correct copy of Note 2, is attached hereto and incorporated by reference herein as Exhibit "F."

11. As an inducement for Funderz to lend the Note 2 Funds, OMTC executed a Security Agreement ("Security Agreement 2") by which OMTC granted Funderz a first priority security interest in the property set forth in §2 of Security Agreement 2 (the "Security Agreement 2 Collateral"). A true and correct copy of Security Agreement 2 is attached hereto and incorporated by reference herein as Exhibit "G." As further security to Funderz for entering into Note 2, OMTC executed the Collateral Assignment ("Collateral Assignment 2") by which OMTC assigned to Funderz all of its right, title, and interest in a certain Master Supply Agreement dated January 10, 2019, by and between OMTC and Calumet Specialty Product Partners, LP as well as the collateral outlined in Section 2 of the Collateral Assignment ("Collateral 2"). A true and correct copy of

Collateral Assignment 2 is attached hereto and incorporated by reference herein as Exhibit "H."

12.   On September 10, 2019, to further induce Funderz to enter into Note 2, Rogers executed the second Guaranty ("Guaranty 2") by which Rogers unconditionally guaranteed the full and prompt payment of all of OMTC's obligations to Funderz on a continuing basis. A true and correct copy of Guaranty 2 is attached hereto and incorporated by reference as Exhibit "I." Additionally, as further inducement for Funderz's agreement to enter into Note 2, Rogers executed the Pledge Agreement ("Pledge Agreement 2") by which he granted Funderz a security interest in and to all of the shares of stock in OMTC as security for Funderz's agreement to provide the Note 2 Funds. A true and correct copy of Pledge Agreement 2 is attached hereto and incorporated by reference herein as Exhibit "J."

**Promissory Note 3**

13.   On or about November 6, 2019, OMTC, as Maker, and Funderz, as Lender, entered into a third Promissory Note ("Note 3") by which Funderz agreed to lend further additional funds (the "Note 3 Funds") to OMTC for the purchase of the Product, therein defined as ultra-low sulfur diesel pursuant to a Master Service Agreement and repayable on the earlier of (i) three (3) Business Days following the consummation of the Sale and (ii) the Outside Date as defined by the terms of Note 3. A true and correct copy of Note 3 is attached hereto and incorporated by reference herein as Exhibit "K."

14.   As an inducement for Funderz to lend the Note 3 Funds, OMTC executed a Security Agreement ("Security Agreement 3") by which OMTC granted Funderz a first priority security interest in the property set forth in §2 of Security Agreement 3 (the "Security Agreement 3 Collateral"). A true and correct copy of Security Agreement 3 is attached hereto and incorporated by reference herein as Exhibit "L." As further security to Funderz for entering into Note 3, OMTC

executed the Collateral Assignment ("Collateral Assignment 3") by which OMTC assigned to Funderz all of its right, title, and interest in a certain Master Supply Agreement dated January 10, 2019, by and between OMTC and Calumet Specialty Product Partners, LP as well as the collateral outlined in Section 2 of the Collateral Assignment ("Collateral 3"). A true and correct copy of Collateral Assignment 3 is attached hereto and incorporated by reference herein as Exhibit "M."

15. On September 10, 2019, to further induce Funderz to enter into Note 3, Rogers executed the Guaranty ("Guaranty 3") by which Rogers unconditionally guaranteed the full and prompt payment of all of OMTC's obligations to Funderz on a continuing basis. A true and correct copy of Guaranty 3 is attached hereto and incorporated by reference as Exhibit "N." Additionally, as further inducement for Funderz agreement to enter into Note 3, Rogers executed the Pledge Agreement ("Pledge Agreement 3") by which he granted Funderz a security interest in and to all of the shares of stock in OMTC as security for Funderz's agreement to provide the Note 3 Funds. A true and correct copy of Pledge Agreement 3 is attached hereto and incorporated by reference herein as Exhibit "O."

16. Note 1, 2, and 3 are collectively referred to as the "Notes." Security Agreement 1, 2, and 3 are collectively referred to as the "Security Agreements." Collateral Assignment Agreement 1, 2, and 3 are collectively referred to as the "Collateral Assignments." Guaranty 1, 2, and 3 are collectively referred to as the "Guaranty Agreements." Pledge Agreement, 1, 2, and 3 are collectively referred to as the "Pledge Agreements." Confession 1 and 2 are collectively referred to as the "Confessions of Judgment." The Note 1, 2, and 3 Funds are collectively referred to as the "Funds." Finally, the Notes, Security Agreements, Collateral Assignments, Guaranty Agreements, and Pledge Agreements are collectively referred to as the "Agreements." Collateral 1, 2, and 3 are collectively referred to as the "Collateral."

TRUSTEE 013

**Additional Facts Supporting Plaintiff's Application for Injunctive Relief**

17. OMTC defaulted under the terms of the Notes by failing to timely pay the amounts due thereunder in compliance with the terms of the Notes. Further, in direct contradiction to the terms of the Notes, the OMTC Defendants fraudulently used the Funds for purposes other than the purchase of ultra-low sulfur diesel for sale in the ordinary course of OMTC's business, including for Rogers's personal use. Funderz discovered that OMTC and Rogers were using the Funds for non-approved purposes and made demand for immediate repayment. At present, Funderz has only recovered a portion of the Funds. Funderz discovered that the Funds were being transferred out of a Goldman Sachs accounts controlled by the OMTC Defendants and into various accounts which are outside of the reach of Funderz.

18. When questioned by the Plaintiff concerning the whereabouts of the Funds, Defendant Rogers initially concocted a story that his wife had cancer and he was unavailable to discuss the location of the Funds as he was caring for her. When further questioned, Rogers provided a fabricated e-mail which purportedly showed that he purchased a large quantity of the Product from Titan Marine Fuel, LLC valued at approximately $5,000,000.00, which Funderz subsequently discovered was fraudulent.[1] Later, OMTC Defendants produced bank statements that the funds were transferred to an entity known as "SDG" (believed to be Site Development Group) and to purchase real property at an unknown location. Despite demand, the OMTC Defendants have wholly failed to, and in fact have been unwilling to, provide an accounting for and definitive information regarding the location of the Funds, who is currently in possession of them, and why they were not used to purchase the Product from Calumet Specialty Product Partners, LP as agreed.

---

[1] *See* Exhibit P, a true and correct copy of the Titan E-mail.

**THIRD AMENDED PETITION**       **PAGE 7**

TRUSTEE 014

19. Further, an analysis of the limited banking information[2] acquired by Funderz demonstrates the fraudulent movement of the Funds by the OMTC Defendants to various checking accounts as well as to pay other entities and creditors:

**OMTC Chase Bank Account #1628 –**

| Date | Transfer In | Source | Transfer Out | Destination |
|---|---|---|---|---|
| 08/29/19 | $5,999,801.00 | Funderz | | |
| 08/29/19 | | | $6,000,000.00 | Checking Account 7879 |
| 08/30/19 | $3,000,000.00 | Checking #7879 | | |
| 08/30/19 | | | $2,700,000.00 | Site Development Group |
| 09/10/19 | | | $250,000.00 | Checking 7879 |
| 09/12/19 | $2,000,000.00 | Funderz | | |
| 09/12/19 | | | $500,000.00 | Site Development Group |
| 09/12/19 | | | $500,000.00 | Checking 7879 |
| 09/16/2019 | | | $777,000.00 | Checking 6837 |
| 09/16/2019 | | | $200,000.00 | Checking 7879 |
| 09/25/2019 | | | $50,000.00 | Site Development Group |
| 09/30/2019 | | | $75,000.00 | Site Development Group |
| 10/30/2019 | | | $125,000.00 | Site Development Group |
| 11/06/2019 | $1,999,801.00 | Funderz | | |
| 11/06/2019 | | | $1,370,000.00 | Site Development Group |
| 11/06/2019 | | | $500,000.00 | Checking 7879 |
| 11/26/2019 | 1,125,000.00 | Checking 7879 | | |
| 11/26/2019 | | | $1,125,000.00 | BMF Capital LLC |
| Balance as of 01/21/2020 | | | $842.83 | |

**OMTC Chase Bank Account #7879 –**

| Date | Transfer In | Source | Transfer Out | Destination |
|---|---|---|---|---|
| 08/29/2019 | $6,000,000.00 | Checking 1628 | | |
| 08/30/2019 | | | $1,000,000.00 | Checking 1503 |
| 08/30/2019 | | | $3,000,000.00 | Checking 1628 |
| 09/03/2019 | $2,000,000.00 | Checking 1503 | | |
| 09/03/2019 | | | $2,000,000.00 | Checking 1503 |
| 09/03/2019 | | | $300,000.00 | Checking 1503 |

---

[2] See Exhibit Q and R, a true and correct copy of the relevant banking information.

THIRD AMENDED PETITION                                                                           PAGE 8

TRUSTEE 015

| Date | | | | |
|---|---|---|---|---|
| 09/03/2019 | | | $1,500,000.00 | Checking 1503 |
| 09/10/2019 | | | $450,000.00 | Checking 1503 |
| 09/10/2019 | $250,000.00 | Checking 1628 | | |
| 09/12/2019 | $500,000.00 | Checking 1628 | | |
| 09/16/2019 | $200,000.00 | Checking 1628 | | |
| 09/16/2019 | | | $150,000.00 | Checking 1503 |
| 09/16/2019 | | | $500,000.00 | Checking 1503 |
| 09/18/2019 | $1,400,000.00 | Site Development Group | | |
| 09/18/2019 | | | $1,400,000.00 | Checking 1503 |
| 09/23/2019 | $750,000.00 | Checking 6837 | | |
| 09/23/2019 | | | $750,000.00 | Checking 1503 |
| 10/30/2019 | $125,000.00 | Checking 1503 | | |
| 10/30/2019 | | | $125,000.00 | Checking 1628 |
| 11/06/2019 | $500,000.00 | Checking 1628 | | |
| 11/06/2019 | | | $500,000.00 | Checking 1503 |
| 11/26/2019 | $910,000.00 | Checking 1503 | | |
| 11/26/2019 | $200,000.00 | Checking 1503 | | |
| 11/26/2019 | | | $1,125,000.00 | Checking 1503 |
| 01/27/2020 | $700,000.00 | Checking 1503 | | |
| 01/27/2020 | $200,000.00 | Checking 8315 | | |
| 01/27/2020 | | | $700,000.00 | Funderz Partial Repayment |
| 01/2/2020 | | | $200,000.00 | Funderz Partial Repayment |
| Balance as of 01/27/2020 | | | $3,964.82 | |

**Facts Supporting Liability Against Site Development Group, Inc.**

20. The OMTC Defendants transferred approximately $4.8 million to SDG in direct contradiction to the terms of the Notes. All conditions precedent to Funderz's right to recover judgment have been performed or were waived and all notices have been given or were waived.

TRUSTEE 016

### Money Paid Back to Date

21. To date, Funderz.net, LLC has received $11.5 million towards repayment of the OMTC Defendants' fraudulent conduct.

### Dennis Rogers's Litigation History

22. Rogers has a demonstrated history of similar conduct. In Cause No. DC-19-01434, which was pending before the 162nd District Court in Dallas County, Texas, Rogers was sued by Luxemborg Trading, LLC after Luxemborg Trading LLC paid Rogers (through another entity, Organ Mountain Energy LLC) $1,000,000.00 to purchase ultra-low sulfur diesel fuel (the "Luxemborg Trading Lawsuit").[3] However, Rogers failed to purchase the fuel as promised, resulting in a settlement agreement between Rogers and Luxemborg Trading LLC, which Rogers proceeded to breach.[4]

23. Further, Rogers was sued by Anthony J. Capano and Joanne Capano for breach of promissory notes and guaranties in Cause No. DC-19-12251 pending before the 192nd District Court of Dallas County, Texas (the "Capano Lawsuit").[5] The Capano Lawsuit is still pending, with the Plaintiffs recently filing a Motion to Overrule Objections, seeking to overrule the objections lodged by Rogers in response to discovery requests.[6] The Motion to Overrule Objections alleges that Rogers has failed to answer any discovery requests or produce any documents.[7] The parties have each filed amendments and it is set for hearing.

24. Finally, both Rogers and OMTC, Inc. were sued in this Court in Cause No. DC-20-

---

[3] A true and correct copy of the Original Petition in the Luxemborg Trading Lawsuit is attached hereto and incorporated by reference herein as Exhibit "S."
[4] *Ex. S*
[5] A true and correct copy of the Capano Lawsuit is attached hereto and incorporated by reference herein as Exhibit "T."
[6] A true and corret copy of the Motion to Overrule Objections filed in the Capano Lawsuit is attached hereto and incorporated by reference herein as Exhibit "U."
[7] *Id.*

**THIRD AMENDED PETITION** **PAGE 10**

TRUSTEE 017

10214 styled *Steven Webster, Aaron Webster, and Dennis Woods v. Dennis J. Rogers, II and OMTC, Inc.* The *Webster* case alleges that, much like the present case, OMTC and Rogers committed fraud to acquire funds for an alleged "purchase."[8]

### OMTC Defendants' Failure to Account for the Funds

25. Plaintiff has, on numerous occasions, including prior to this lawsuit being filed, requested information from the OMTC Defendants regarding the current location of the Funds. The OMTC Defendants have only provided limited information, continually refusing to provide a definitive accounting for the use and movement of the Funds advanced by Plaintiff. Therefore, in conjunction with the filing of this Amended Petition, Plaintiff is also filing an Emergency Motion for Expedited Discovery.

### Facts Related to the Settlement of the Parties and the OMTC Defendants' Fraud and Subsequent Repudiation of the Same

26. Plaintiff reached a settlement with the OMTC Defendants (the "Settlement") after over a month of negotiations, including extensive mediation, thereby postponing Plaintiff's filing of the current Amended Petition.[9] The Settlement was formalized through a Settlement Agreement executed by the OMTC Defendants on or about March 4, 2020 (the "Settlement Agreement"). The Settlement called for the OMTC Defendants to make certain payments to the Plaintiff by way of a set payment schedule while also producing certain documents to allow the Plaintiff to monitor OMTC Defendants' financial situation and trace the location of Plaintiff's funds. In exchange, Plaintiff agreed to release certain UCC-1 Financing Statements it filed in New York and Texas.

27. The Settlement was an effort by the Plaintiff to settle its claims against the OMTC Defendants, which included not only breach of contract and fraud allegations, but also Texas Theft

---

[8] A true and correct copy of the *Webster* First Amended Petition is attached as Exhibit V.
[9] A true and correct copy of the Settlement Agreement is referenced as Exhibit W, though the same is being produced only *in camera* due to confidentiality.

**THIRD AMENDED PETITION**                                         **PAGE 11**

TRUSTEE 018

Liability Act, Conversion, Fraud in the Inducement, Money Had and Received, and exemplary damage claims. Plaintiff materially changed positions, agreeing to forgo seeking recovery on these causes of action in exchange for a $15 million settlement, an amount equal to the principal of the Notes plus the amount represented to the Plaintiff as Plaintiff's expected profit under the Notes.

28. One of the primary points of negotiation during both mediation and negotiation of the Settlement Agreement was the OMTC Defendants' promise to turn over certain documents, including information related to Rogers' alleged ownership interest in an entity which was, prior to the Settlement Agreement's execution, simply referred to as the "Residential Lot Entity." Counsel for the OMTC Defendants refused to release the name of the Residential Lot Entity prior to execution of the Settlement Agreement. Ultimately, subsequent to the parties' execution of the Settlement Agreement, the name of the Residential Lot Entity was provided as "The Rogers Group, Inc." However, in the course of litigation, Plaintiff discovered during a deposition of Dennis Rogers Sr., Defendant Rogers' father, that Defendant Rogers has no interest in the Rogers Group, Inc. nor does he have the authority, or ability, to provide financial information and documents regarding the Rogers Group, Inc.'s assets.[10] Therefore, as the exchange of documents was a central component of the Settlement Agreement for which Rogers was unable to perform *ab initio*, the Settlement Agreement is void/voidable. In short, the OMTC Defendants continued their chain of fraud, attempting to cover their wrongdoing by making promises they had no intention, or ability, to perform.

29. Rather than attempting to perform by turning over what documents were available and making the payments required under the Settlement Agreement, the OMTC Defendants decided to attempt to claim a technical breach of the Settlement by the Plaintiff.

---

[10] *See* Exhibit X, an excerpt from the Deposition of Dennis Rogers Sr.

THIRD AMENDED PETITION PAGE 12

TRUSTEE 019

30. Plaintiff's principals are located in the New York/New Jersey area (while also having some operations in Florida) which was, at the time, the epicenter for the United States' COVID-19 cases. Plaintiff provided the signed Settlement Agreement, dated March 9, 2020, to its counsel on March 16, 2020, by way of e-mail. Prior to March 16, 2020, counsel for the Plaintiff was not in possession of a fully-executed copy of the Settlement. The fully-executed copy of the Settlement was forwarded to the OMTC Defendants' counsel via e-mail on March 18, 2020. Further, on March 23, 2020, within five (5) business days of counsel's knowledge of the fully executed agreement, Plaintiff's counsel e-mailed the OMTC Defendants' counsel copies of the draft UCC-3 Termination Statements contemplated in the Settlement, requesting input. After receiving no return message from the OMTC Defendants' counsel, and in an attempt to perform under the Settlement Agreement, Plaintiff's counsel filed the UCC-3 Termination Statements in both Texas and New York, thereby terminating Plaintiff's perfect liens against the OMTC Defendants. Only after the UCC-1s were terminated, and the OMTC Defendants' next date of performance was mere days away, did the OMTC Defendants' counsel claim that there was a material breach of the Settlement (without inquiring as to any of the facts surrounding the same) and inform Plaintiff's counsel that the OMTC Defendants would not honor the settlement as agreed, threatening counsel with sanctions should counsel file the Agreed Judgment.

31. Therefore, not only did the OMTC Defendants default under the Settlement, attempting to escape such a default by claiming a "technical breach" despite no harm befalling them, but the OMTC Defendants made representations of fact that were false and, in fact, were impossible for them to perform, resulting in a void/voidable Settlement Agreement.

### V. CAUSES OF ACTION

**Count I – Enforcement of the Settlement Agreement and Entry of the Agreed Judgment – The OMTC Defendants**

32. Plaintiff requests the Court order the parties to specifically perform in compliance with the terms of the Settlement Agreement. Plaintiff performed its responsibilities under the Settlement Agreement within five (5) business days after its counsel received a fully executed Settlement Agreement. Further, and even if performance was somehow late, Plaintiff performed under the Settlement Agreement by filing the UCC-3 Termination Statements. Only after accepting Plaintiff's performance did OMTC Defendants claim existence of a material breach and inform Plaintiff it would not perform as required by the terms of the Settlement Agreement. Plaintiff requests that the Court order the OMTC Defendants to perform under the terms of the Settlement Agreement by providing the required documentation and making the payments as set forth therein. Absent performance, Plaintiff requests the Court enter the Agreed Judgment.

**Count II - Breach of Settlement Agreement – OMTC, Inc. and Dennis James Rogers II**

33. Additionally, and if necessary, in the alternative, as set forth herein, OMTC Defendants have materially breached the terms of the Settlement Agreement. The OMTC Defendants failed to comply with the requirements of the Settlement Agreement by refusing to turn over documents described therein on or before April 6, 2020, and have failed to make the payment due on or before April 7, 2020. Additionally, despite receiving notice of default and being given an opportunity to cure, the OMTC Defendants have wholly failed and refused to do so. Therefore, Plaintiff seeks recovery of the amounts due and owing under the Settlement Agreement, $11,150,000.00, plus pre-judgment interest, post-judgment interest, attorney's fees, and costs of Court.

**Count III- Breach of Contract – OMTC, Inc. and Dennis James Rogers II**

34. OMTC's conduct and default as set forth herein constitutes a breach of contract under the terms of the Notes. Further, Rogers's conduct and default as set forth herein constitutes a

TRUSTEE 021

breach of the Guaranty Agreements as Rogers failed to pay the amounts due and owing on the Notes upon OMTC's default. The OMTC Defendants have failed to comply with their contractual obligations to Funderz and have failed and refused to pay the amounts due and owing under the terms of the Notes. As a result, Funderz seeks actual and special damages, at law or in equity, within the jurisdictional limits of this Court, including pre-judgment interest from the date of default, post-judgment interest, reasonable and necessary attorney's fees, and costs of court.

### Count IV – Breach of Guaranty – Dennis James Rogers II

35. Rogers's conduct and default as set forth herein constitutes a breach of the Guaranty Agreements. Rogers failed to pay the amounts due and owing to Funderz under the terms of the Notes upon OMTC's default thereunder, despite Funderz's performance under the terms of the underlying Notes. As a result, Funderz seeks actual and special damages, at law or in equity, within the jurisdictional limits of this Court, including pre-judgment interest from the date of default, post-judgment interest, reasonable and necessary attorney's fees, and costs of court.

### Count V – Fraud/Fraud in the Inducement/Fraud by Nondisclosure – OMTC, Inc. and Dennis James Rogers II

36. The OMTC Defendants committed fraud by promising Funderz that the Funds would be used for OMTC's business purposes and, more specifically that the Funds would be used to purchase the Product from Calumet Specialty Product Partners, LP and would then sell the Product to OMTC's customers, paying Funderz under the specific terms set forth in the Notes. However, the OMTC Defendants, with full knowledge of Funderz's expectations and the falsity of the OMTC Defendants' promises made in the Agreements, entered into the Agreements intending to use the Funds for personal use rather than for the express business purpose set forth in the Agreements. Funderz advanced the Funds in reliance upon the OMTC Defendants' promises and with the expectation that the OMTC Defendants would perform as promised. As a result of the

TRUSTEE 022

OMTC Defendants' malicious, intentional, and flagrant conduct, Funderz seeks actual and special damages, including exemplary damages, at law or in equity, within the jurisdictional limits of this Court, including pre-judgment interest from the date of default, post-judgment interest, reasonable and necessary attorney's fees, and costs of court. Additionally, Plaintiff expressly states that it seeks recovery of exemplary damages under Tex. Civ. Prac. & Rem. Code §41.003 to the fullest extent allowed by law due to the OMTC Defendants', malicious, fraudulent, and wrongful conduct.

### Count VI – Conversion – OMTC Defendants

37.     The Funds advanced by Plaintiff to the OMTC Defendants were private property owned by Plaintiff and intended to secure the purchase of certain fuel products from Calumet Specialty Product Partners, LP. These funds were private property marked towards specific collateral. The OMTC Defendants converted the funds for the own personal benefits. Therefore, the OMTC Defendants' wrongful conversion has caused actual and special damages to Plaintiff in an amount within the jurisdictional limits of this Court, plus pre-judgment and post-judgment interest, court costs, attorney's fees, and exemplary damages as applicable.

### Count VII – Texas Theft Liability Act/Civil Theft – The OMTC Defendants

38.     The OMTC Defendants committed theft by misrepresenting the intended use of the funds advanced under the Notes and then by secreting the funds to other accounts and creditors. Their theft by deception constitutes a wrongful act under Tex. Civ. Prac. & Rem. Code §134.001 *et seq*. Therefore, the OMTC Defendants are liable to Plaintiff for actual and special damages of at least $10,000,000.00, found by the trier of fact plus statutory awards found in Tex. Civ. Prac. & Rem Code §134.005 and exemplary damages.

### Count VIII – Chapter 41 Exemplary Damages – The OMTC Defendants

39.     The OMTC Defendants exhibited fraudulent and malicious conduct which allows

Case 22-30500-swe7 Doc 271-2 Filed 12/05/24 Entered 12/05/24 14:47:07 Desc
Exhibit Page 17 of 20


Plaintiff to seek recovery of exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code §41.003. Further, Plaintiff seeks recovery for the maximum amount of exemplary damages allowed by law as the statutory caps found under Tex. Civ. Prac. & Rem. Code §41.008 do not apply because the OMTC Defendants' conduct consists of actions found in various sections of the Texas Penal Code, including §32.45 and Chapter 31 (theft) and 32 (fraud). Therefore, Plaintiff seeks recovery of exemplary damages *of at least* two times the actual damages, plus $750,000.00.

### Count XI - Attorneys' Fees

40. Upon OMTC Defendants' failure to pay the balance owing under the Agreements, Funderz placed said contracts in the hands of the undersigned attorney for enforcement and has agreed to pay said attorney reasonable attorney's fees for his services for which OMTC Defendants have become liable by the terms of the Agreements as well as by virtue of Chapter 38 of the Texas Civil Practice and Remedies Code.

### Count X – Constructive Trust As to Site Development Group, Inc.

41. SDG is the recipient of at least $4.8 million that was paid to it as a result of fraud by the OMTC Defendants. Therefore, SPG, as the recipient of monies procured by fraud, should not be permitted to retain the funds. Plaintiff requests the Court institute a constructive trust against SPG regarding the funds in SPG's possession which it received from the OMTC Defendants.

### Count XI – Fraudulent Inducement - OMTC, Inc. and Dennis James Rogers II

42. The OMTC Defendants committed fraud in the inducement by representing to Plaintiff that they had a large ultra-low sulfur diesel purchase from Calumet Specialty for which they intended to use the Funds advanced under the Note. This representation, which forms the entire basis of the Notes entered into between Plaintiff and the OMTC Defendants (along with the associated ancillary agreements) was not only a misrepresentation, but outright false. OMTC

TRUSTEE 024

Defendants' conduct constituted a knowing, malicious misrepresentation of fact that the OMTC Defendants were fully aware was relied upon by the Plaintiff in entering into the Notes.

43. Rather than coming clean, the OMTC Defendants compounded their misrepresentation by misrepresenting their ability to repay the $15 million settlement amount and by misrepresenting their authority to turn over documents for the Rogers Group, Inc., an important and highly negotiated portion of the Settlement. These false representations were relied upon by Plaintiff in settling their claims, which included a potential recovery of exemplary damages well in excess of $20 million, forgoing the litigation and settling at $15 million. This further delayed Plaintiff's recovery efforts, exacerbating the fraud by withholding Plaintiff's funds for a longer period of time. Therefore, Plaintiff seeks recovery of actual and special damages, pre-judgment interest, post-judgment interest, attorney's fees and costs of court. Additionally, Plaintiff expressly states that it seeks recovery of exemplary damages under Tex. Civ. Prac. & Rem. Code §41.003 to the fullest extent allowed by law due to OMTC Defendants, OMTC, Inc. and Dennis James Rogers II's, malicious, fraudulent, and wrongful conduct.

### Count XII- Money Had and Received – All Defendants

44. OMTC Defendants hold money, which in equity and good conscience, belongs to the Plaintiff. However, OMTC Defendants have failed and refused to turn over the funds to Plaintiff.

### Count XIII – Turnover of Pledged Assets – OMTC, Inc. and Dennis James Rogers II

45. Pursuant to the terms of the Security Agreements, Collateral Assignments, and Pledge Agreements, OMTC, Inc. and Dennis James Rogers II pledged certain assets to Funderz in the event they defaulted under the Notes and Guaranty Agreements. As OMTC, Inc. and Dennis James Rogers II have unquestionably defaulted under the terms of the Notes and Guaranty

TRUSTEE 025

Agreements, Plaintiff seeks turnover of the collateral set forth in the Security Agreements, Collateral Assignments, and Pledge Agreements in compliance with their terms.

## VI. CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Funderz seek the following relief and requests that:

a. Defendants be cited to appear and answer herein;

b. Recovery from Defendants, jointly and severally, of actual and special damages within the jurisdictional limits of this Court, including recovery of pre-judgment interest at the contract rate from the date of default, October 15, 2019;

c. Recovery from the OMTC Defendants, jointly and severally, of exemplary damages resulting from OMTC Defendants malice and fraud pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code;

d. Reasonable attorneys' fees, costs, and expenses incurred in bringing this action;

e. Post-judgment interest as allowed by law; and

f. Specific performance of the terms of the Settlement Agreement;

g. Any and all such further and additional relief, whether at law or in equity, to which Funderz demonstrates itself entitled.

TRUSTEE 026

**Respectfully submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
817-338-1616 Phone
817-338-1610 Fax
mstout@padfieldstout.com
mdg@padfieldstout.com
bgibbons@padfieldstout.com

/s/ Mark W. Stout
Mark W. Stout
State Bar I.D. # 24008096
Matthew D. Giadrosich
State Bar I.D. # 24074274
Brandon J. Gibbons
State Bar I.D. #24082516

*Attorneys for Plaintiff*

### Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all parties who have made an appearance herein by and through counsel via e-service.

/s/ Brandon J. Gibbons
Brandon J. Gibbons